**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| NATIONAL ASSOCIATION FOR THE<br>ADVANCEMENT OF COLORED PEOPLE,<br>4805 Mt. Hope Drive<br>Baltimore, MD 20215<br><br>*Plaintiff*,<br><br>vs.<br><br>HARMEET DHILLON,<br>In Her Official Capacity as<br>Assistant Attorney General of the<br>CIVIL RIGHTS DIVISION<br>U.S. DEPARTMENT OF JUSTICE,<br>950 Pennsylvania Ave. NW<br>Washington, DC 20530<br><br>*Defendant* | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | **Civil Action No. 26-3461** |

**MEMORANDUM IN SUPPORT OF**
**PLAINTIFF'S MOTION FOR EMERGENCY RELIEF**

## INTRODUCTION

With less than one (1) month until the 2026 midterm general election, it is now urgent and necessary for the Defendant to immediately respond to the Plaintiff's Freedom of Information Act (FOIA) request regarding Defendant's widespread publicity of so-called "election monitors." The Defendant had the ability to keep this matter out of Court by complying with their required duties under FOIA 5 U.S.C. § 552(a)(3)(A). Rather than take the action required by statute, however, the Defendant prioritized issuing social media and other public statements in select outlets about the "election monitors," rather than informing the public on records critical to shining a light on their ever evolving and increasingly expansive plans. The Defendant's interests are clearly outweighed by the Plaintiff's interest in effectuating the purpose of the FOIA statute given the national public interest in this issue and the urgency of the timeline. Simply put, transparency regarding the Justice Department's unprecedented plan to deploy "election monitors" to all 50 states is needed now.

The public deserves to know what the Defendant's unprecedented plans are to deploy its employees and agents across the country on Election Day. The public deserves to know who these individuals will be, what their enforcement priorities are, and under what authority they are being sent. Finally and crucially, with the ever-expanding size and scope of the Defendant's plans, the public needs to know where the Defendant is sending its "election monitors" and the actual magnitude of deployment.

The preceding Motion for Emergency Relief is based on the four factors weighed by courts when determining whether to grant emergency relief. *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, at 20 (2008). The balance of those factors clearly rests in favor of granting Plaintiff's request for emergency relief.

**FACTS**

Defendant has conflated two distinct and separate realities. First, the Civil Rights Division has, for decades, led a federal observer program pursuant to Section 3(a) of the Voting Rights Act (which allows for observers pursuant to court order) and Section 4 of the Voting Rights Act (which allowed for observers upon certification by the Attorney General). The Division ceased deployments of observers under Section 4 of the Act following the *Shelby County, Alabama v. Holder*, 570 U.S. 529 (2013) decision. Second, the Civil Rights Division more recently, and informally, has deployed its civil staff to monitor elections in very limited situations where there have been colorable complaints or information regarding civil rights issues that are tied to the Division's enforcement authority, where the jurisdiction has provided consent for the presence of such monitors, and where notice has been provided to the public. These monitors served a role that was limited in scope and mindful of the role that states play in running elections under the Constitution. To that end, the Civil Rights Division's election monitoring efforts also historically prohibited the use of criminal prosecutors and any law enforcement personnel (e.g., FBI staff) to avoid intimidation of voters, itself a violation of federal law, and to avoid any overreach into the role that states play in running elections under our Constitution.

According to public reporting over the last several months, however, the Civil Rights Division began deploying "election monitors" to states during the 2026 midterm primary elections, at times without notice to the public, nor without notice to election officials or the voters.[1] Some of the so-called "monitoring" activities of the Civil Rights Division conducted during the primaries already delved into areas far beyond the scope of the Civil Rights Division's authority. Wyoming

[1] See e.g. Civil Rights Division of the Department of Justice. Justice Department to Conduct Election Monitoring in South Carolina Primary Election. https://www.justice.gov/opa/pr/justice-department-conduct-election-monitoring-south-carolina-primary-election. (August 25, 2026).

officials, for example, described the actions of DOJ monitors as "aggressive" and "irregular" and observed monitors asking questions that were "outside the scope of federal voting rights laws."[2]

In addition, Wyoming officials indicated that they did not know that monitors were being sent to the state, leaving voters and the public at-large in the dark as well. The public deserves notice and an opportunity to oppose these deployments if and when they run contrary to state law or present the risk of intimidation or other unlawful conduct.

The monitors deployed to polling locations in the 2026 primaries reportedly included multiple attorneys who previously worked to spread misinformation and promoted dangerously false conspiracy theories about the certified results of the 2020 election.[3] In one particularly chilling and concerning instance, one of the DOJ "election monitors" had previously pleaded guilty to two misdemeanor charges and served jail time in connection with an attempt to hack into a county elections website in Florida in 2016.[4] The public deserves information on the qualifications of people who have been identified to serve in these roles.

On August 17, 2026, Assistant Attorney General Harmeet Dhillon announced plans to send 1,000 Department of Justice employees to serve as "election monitors" at polling sites across the country during the November 3, 2026 midterm general election.[5] This announcement was made without any evidence that there were colorable complaints made about potential civil rights violations that would occur on November 3, 2026.

---

[2] Edelman, Adam, "*Wyoming's Republican governor raises concerns over aggressive DOJ election monitors*," NBC News (Aug. 27, 2026), https://www.nbcnews.com/politics/2026-election/wyoming-republican-governor-concerns-aggressive-doj-election-monitors-rcna594730.

[3]Cohen, Gabe and Sneed, Tierney, "*Inside Trump's Plan For the 'Biggest DOJ Election Observer Effort in History*," (September 25, 2026) https://www.cnn.com/2026/09/25/politics/trump-election-monitors-voting-machines-vis

[4] Rivas, Yunior, *"Exclusive: Trump DOJ appears to have hired lawyer convicted of hacking election sites to check 'integrity',"* Democracy Docket (August 21, 2026), https://www.democracydocket.com/news-alerts/trump-doj-appears-to-have-hired-lawyer-convicted-of-hacking-election-sites/.

[5] Lynch, Sarah, "*Justice Department to Send a Record 1,000 Monitors to Polling Places in Midterm Elections,"* CBS News (Aug. 18, 2026), https://www.cbsnews.com/news/justice-department-election-monitors-midterms/

Moreover, on October 4, 2026, Attorney General Todd Banche indicated that there may be well over 1,000 monitors and stated that they would be sent to every state.[6] The public deserves transparency about this increasingly expansive and unprecedented operation.

Amid this backdrop, the National Association for the Advancement of Colored People (Plaintiff) submitted a request on September 1, 2026 to the Civil Rights Division under the Freedom of Information Act (FOIA) for information and records related to the "election monitoring" activities of the Civil Rights Division.[7] On September 21, 2026, the Civil Rights Division sent an email acknowledging receipt of the FOIA request, but without any of the required components to constitute a fulfilment of their statutory obligations.[8] Crucially, the email response did not state that the Civil Rights Division had made any determination on the documents it intended to produce or withhold, and there was no indication that it had even begun to gather and review the records at issue.

Since the submission of the Plaintiff's FOIA request, the Civil Rights Division has continued to plan and take steps to bring about its menacing threats of an unprecedented federal intrusion into elections this Election Day. The Department has been aggressively recruiting a record number of poll monitors for the November general election. On September 10, 2026, Acting Deputy Attorney General Trent McCotter sent an email to all DOJ employees requesting Department attorneys and professional staff volunteer to serve as election monitors for the November 3, 2026 midterm general election.[9] The email was accompanied by a memorandum expressly including federal prosecutors in the recruitment effort: "[W]e are seeking attorneys and

---

[6] Fox News. "*AG Todd Blanche Hits Back on Deportation Policy, Election monitor Fears,*" (October 4, 2026). Video available at: https://www.foxnews.com/video/6406211288112.
[7] *See* Complaint [1] Exhibit A.
[8] *See* Complaint [1] Exhibit B.
[9] The Steady State, "*An Open Letter: Current and Former Department of Justice Employees: Protect Every Voter,*" Originally published September 11, 2026. https://steadystate1.substack.com/p/an-open-letter-current-and-former (Last accessed Oct. 5, 2026).

professional staff from all Divisions and U.S. Attorneys' Offices (USAO) across the Department to serve as election monitors."[10] There is no indication about the qualifications for service on prohibitions on DOJ staff that fall into the historically-barred categories of law enforcement personnel or prosecutors. There is no indication about the limits of this monitoring operation or the restraints that will be imposed on anyone who may be deployed. This is not just rhetoric or hyperbole; Defendant Dhillon recently stated that the Civil Rights Division was "pretty close" to reaching 1,000 volunteers.[11]

On September15, 2026, the Director of the Federal Bureau of Investigation, Kash Patel, testified before the Senate Judiciary Committee, "We have an election crimes community coordinator in all 56 field office[s], so you bet we're going to have them there and manning the post for election interference matters."[12]

Critically, the Civil Rights Division's plans for Election Day continue to grow in size and scope. On October 4, 2026, the Attorney General stated during an interview on Fox News that the Civil Rights Division is going to send "a thousand or more" of DOJ staff to "every state" in the country on Election Day.[13]

## ARGUMENT

Plaintiff seeks emergency relief to require the Defendant to comply with FOIA and to do so on an expedited timeline to ensure transparency in the Defendant's plans for the November 3, 2026 midterm general election.

---

[10] *Id.*
[11] Knutson, Jacob, "*DOJ Close to Recruiting 1,000 Election Monitors for Midterms, Harmeet Dhillon Says,*" Democracy Docket (Sept. 22, 2026), https://www.democracydocket.com/news-alerts/doj-close-to-recruiting-1000-election-monitors-for-midterms-harmeet-dhillon-says/.
[12] Barr, Luke and Hensley, Sarah Beth. Kash Patel Clashes With Dems About Possibly Sending FBI Agents to Polling Places. ABC News. Sept. 15, 2026. https://abcnews.com/Politics/kash-patel-testify-fbi-oversight-senate-committee/story?id=136428159 .
[13] Fox News. "*AG Todd Blanche Hits Back on Deportation Policy, Election monitor Fears,*" (October 4, 2026). Video available at: https://www.foxnews.com/video/6406211288112.

When granting emergency relief, a plaintiff must establish that they are likely to succeed on the merits of the case; that they are likely to suffer irreparable harm in the absence of preliminary relief; that the balance of equities tips in their favor; and that an injunction is in the public interest. *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, at 20 (2008).

**A. Plaintiff is Likely to Succeed on Merits**

The Plaintiff has clearly established precedent on its side dealing with the exact issue of this case. The text of the FOIA statute is clear and the D.C. Circuit has squarely addressed the issue of a defendant agency's failure to make a determination within the 20-day timeframe prescribed by FOIA. See *Citizens for Responsibility and Ethics in Washington v. FCC,* DC Cir. 711 F.3d 180, 188-90 (2013).

The law on making a "determination" for the purposes of an agency's response to a FOIA request is clear. "[I]n order to make a 'determination' and thereby trigger the administrative exhaustion requirement, the agency must at least: (i) gather and review the documents; (ii) determine and communicate the scope of the documents it intends to produce and withhold, and the reasons for withholding any documents; and (iii) inform the requester that it can appeal whatever portion of the "determination" is adverse." *Citizens for Responsibility and Ethics in Washington v. FCC*, DC Cir. 711 F.3d 180, 188 (2013).

As in *Citizens v. FCC*, the Defendant here did not provide in their response to Plaintiff that they were gathering and reviewing the records at issue, nor did they make the required determination of what documents they intend to produce or withhold. As a result of this inaction on the part of Defendants, "the 'penalty' is that the agency cannot rely on the administrative exhaustion requirement to keep cases from getting into court." *Id*, at 189-190. Thus judicial

intervention in the FOIA request, as sought in the underlying Complaint [1] is clearly proper, and therefore the Plaintiff will succeed on the merits of the case.

**B. Plaintiff Will Suffer Irreparable Harm if the Court Does Not Take Emergency Action**

The harm to be suffered by the Plaintiff is clear: the information sought in the FOIA request involves the fundamental right to vote, and potential interference and suppression of that right by the Defendant's oft toted, eerily vague and undisclosed plans to completely shift its historic Election Day work. In Defendant's own words, they will conduct the largest deployment of DOJ lawyers and personnel to polling locations around the country in the history of the United States.[14] Yet, it is unknown who these lawyers and staff will be and what they will do on Election Day. Given what states witnessed from the previous iteration of the Defendant's staff during the 2026 midterm primary elections, there is reason to be concerned that the activities will continue to be aggressive and extend beyond the scope of the Civil Rights Division's power.

Voting is the cornerstone of a citizen's rights in a democracy because it is the wellspring from which our institutions derive power. The right to vote is chief among the bundle of rights that define American citizenship. Over a half-century ago, the Supreme Court cemented that principle, writing that "the right to exercise the franchise in a free and unimpaired manner is preservative of other basic civil and political rights." *Reynolds v. Sims*, 377 U.S. 533, at 562 (1964). The Supreme Court further recognized that the right to vote can be suppressed by even the "appearance of coercion in the electoral process" when enforcement arms of the government are in the vicinity of polling locations. *Burson v. Freeman*, 504 U.S. 191 at 207 (1992).

[14] Knutson, Jacob, *DOJ Close to Recruiting 1,000 Election Monitors for Midterms, Harmeet Dhillon Says*, Democracy Docket (Sept. 22, 2026), https://www.democracydocket.com/news-alerts/doj-close-to-recruiting-1000-election-monitors-for-midterms-harmeet-dhillon-says/.

The nature of this FOIA request being tied to the planning of Defendant for the pending Election Day, which is less than a month away from the date of this filing, makes it clear that if the Court does not issue the emergency relief sought by Plaintiffs, then the Defendant will effectively and actually be permitted to ultimately violate the terms of FOIA. This, too, is a form of irreparable harm.

The Plaintiff, therefore, is likely to suffer irreparable harm both with regards to the substantive issue of Defendant's plans to dispatch its employees in a manner that has the outcome of suppressing a fundamental right, *and* the complete lack of redress and mootness of the FOIA request following November 3, 2026.

The Defendant, in contrast, would not be injured by the Court's issuance of the emergency relief because the agency created this situation through its own inaction. A Defendant cannot claim injury from its own dereliction of a previous duty. As in *Citizens v. FCC*, the Defendant here did not provide in their response to Plaintiff the either than they were gathering and reviewing the records at issue, nor did they make the required determination of what documents they intend to produce or withhold. This is not a high bar and yet the Defendant chose to shirk their legal responsibility.

At most, the Defendant can allege that the expedited production of documents order by this Court would consume agency resources. While that may be true, the Defendant has demonstrated through its ability to recruit 1,000 DOJ employees (and more according to Attorney General Blanche) for the monitoring scheme at issue that it has expanded capacity for extracurricular work.

### C. The Balance of Equities Weigh in Favor of Plaintiff

In essence, the scales consist of a time-bomb of injury on the Plaintiff's side of irreparable harm to the fundamental right to vote for Plaintiff's members, and the public at large. The right to

vote free from intimidation and the right to ensure that elections are carried out free from federal interference on the part of the Defendant, far outweigh the administrative resources that might have to be temporarily redirected to fulfil the agency's duties under the FOIA statute. To be clear, the Defendant *is* required by statute to comply with FOIA. The Defendant *is not* required by any statute to overextend itself by launching an unprecedentedly large and undefined deployment of "election monitors" to jurisdictions across the country to the potential peril of voters and election officials alike.

**D. The Emergency Relief Sought is in the Public's Interest**

The public will benefit substantially from the information requested by Plaintiff. The actions of the Defendant regarding their undefined, ever evolving and rapidly expanding plans for Election Day have produced fear and carry the risk of interfering with the conduct of the November general election. The sunshine of public transparency is always in the public's interest when compared to a government agency being permitted to carry out an opaque, large scale operation without guardrails, untethered to any real complaint, need or statutorily given authority, especially when dealing with the public's fundamental right to vote.

## CONCLUSION

For the foregoing reasons, it is respectfully submitted to the Court that it should grant Plaintiff's Motion for Emergency Relief and direct Defendant Dhillon to immediately begin to identify, produce and release the records requested by Plaintiff's FOIA request; preserve all records, in whatever form they exist, potentially responsive to Plaintiff's FOIA request prior and during the processing of its request; and grant Plaintiff's request for fee waivers to the underlying FOIA request. This Court should further order that Defendant Dhillon complete these actions no later than one (1) week from the issuance of its Order. Finally, should the Court find it necessary, the

Plaintiff respectfully submits to the Court that the Court additionally has the authority under 28 U.S.C. § 1361 to issue a Writ of Mandamus compelling Defendant Dhillon to act in order to accomplish all of the relief requested by Plaintiff.

Dated: October 5, 2026

Respectfully Submitted,

___*/s/ Kristen M. Clarke*___

Kristen M. Clarke (DC Bar No. 973885)
Max L. Meyers*
NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE
4805 Mt. Hope Drive
Baltimore, MD 21215
(480) 580-5777
Legal@naacpnet.org

* Pro hac vice application forthcoming

## CERTIFICATE OF SERVICE

I, Kristen M. Clarke, hereby certify that, in compliance with Local Rule LCvR 65.1(a), actual notice of the time of making the application, and copies of all pleadings and papers filed in the action to date or to be presented to the Court at the hearing, have been furnished to the adverse party. The foregoing has been served by Certified USPS mail to the Defendant at the following locations:

- Jeanine Ferris Pirro
  United States Attorney, District of Columbia
  601 D Street NW
  Washington, DC 20004

- Todd Blanche
  Attorney General
  U.S. Department of Justice
  950 Pennsylvania Avenue NW
  Washington, DC 20530

- Harmeet Dhillon
  Asst. Attorney General
  Civil Rights Division
  U.S. Department of Justice
  950 Pennsylvania Avenue NW
  Washington, DC 20530

Dated October 5, 2026 _____*/s/ Kristen Clarke*____