UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE,<br><br>*Plaintiff*,<br><br>v.<br><br>HARMEET DHILLON, in her official capacity as Assistant Attorney General, Civil Rights Division, U.S. Department of Justice,<br><br>*Defendant*. | Civil Action No. 26-3461 (SLS) |

**<u>OPPOSITION TO MOTION FOR EMERGENCY RELIEF</u>**

## TABLE OF CONTENTS


Table of Contents ..... i

Table of Authorities ..... ii

Introduction ..... 1

Background ..... 2

I. Factual Background. ..... 2

II. Procedural Background. ..... 4

Legal Standard ..... 6

Argument ..... 8

I. Plaintiff Fails to Demonstrate a Likelihood of Success on the Merits Because CRT Has Been Exercising Diligence in Processing the Request. ..... 8

A. Plaintiff Names the Wrong Defendant. ..... 8

B. CRT's Failure to Make a Determination on Plaintiff's FOIA Request Within Twenty Working Days Does Not Entitle Plaintiff to Relief ..... 9

C. Plaintiff Is Not Entitled to Expedited Processing Because It Has Not Requested Expedited Processing ..... 10

D. Plaintiff Is Not Entitled to the Records Sought by a Date Certain Because Defendant Must First Determine Whether the Documents Are Exempt and Complete the Consultation Process ..... 13

II. Plaintiff Has Not Established Irreparable Harm. ..... 16

A. Plaintiff Fails to Connect the Records Requested to the Harm Alleged ..... 17

B. Plaintiff's Own Actions Undermine Its Claim for Irreparable Injury ..... 19

C. There Is No Irreparable Injury Because the Documents Are Likely to Be Withheld or Substantially Redacted ..... 22

D. There Is No Irreparable Injury Because the Request Calls for the Creation of Records ..... 23

III. The Balance of the Equities and Public Interest Weigh Against Emergency Relief. . 24

IV. The Court Should Require Plaintiff to Post Security ..... 28

Conclusion ..... 29

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AHA v.* Price,
867 F.3d 160 (D.C. Cir. 2017) ........ 26
*Al-Fayed v. CIA*,
254 F.3d 300 (D.C. Cir. 2001) ........ 12
*Allied Progress v. Consumer Fin. Prot. Bureau*,
No. Civ. A. No. 17-0686 (CKK), 2017 WL 1750263 (D.D.C. May 4, 2017) ........ 19
*Am. Civil Liberties Union of N. California v. Dep't of Justice*,
Civ. A. No. 04-4447, 2005 WL 588354 (N.D. Cal. Mar. 11, 2005) ........ 19
*Am. Oversight v. Dep't of State*,
414 F. Supp. 3d 182 (D.D.C. 2019) ........ 14
*Arbaugh v. Y&H Corp.*,
546 U.S. 500 (2006) ........ 7
*Ass'n of Flight Attendants v. Pension Benefit Guar. Corp.*,
372 F. Supp. 2d 91 (D.D.C. 2005) ........ 17
*Aviles-Wynkoop v. Neal*,
978 F. Supp. 2d 15 (D.D.C. 2013) ........ 16
*Ayele v. District of Columbia*,
Civ. A. No. 23-1785 (ABJ), 2023 WL 8354883 n.15 (D.D.C. Dec. 1, 2023) ........ 22
*Baker v. Consumer Fin. Prot. Bureau*,
Civ. A. No. 18-2403(CKK), 2018 WL 5723146 (D.D.C. Nov. 1, 2018) ........ 14, 27
*Barnes v. E-Sys., Inc. Grp. Hosp. Med. & Surgical Ins. Plan*,
501 U.S. 1301 (1991) ........ 24
*Benisek v. Lamone*,
585 U.S. 155 (2018) ........ 7
*Cabezas v. FBI*,
109 F.4th 596 (D.C. Cir. 2024) ........ 12
*Cause of Action Inst. v. Eggleston*,
224 F. Supp. 3d 63 (D.D.C. 2016) ........ 16, 26
*Chaplaincy of Full Gospel Churches v. England*,
454 F.3d 290 (D.C. Cir. 2006) ........ 16
*CityFed Fin. Corp. v. Off. of Thrift Supervision*,
58 F.3d 738 (D.C. Cir. 1995) ........ 8
*Competitive Enterprise Institute v. Podesta*,
643 F. Supp. 3d 121 (D.D.C. 2022) ........ 9
*Cornish v. Dudas*,
540 F. Supp. 2d 61 (D.D.C. 2008) ........ 16
*Citizens for Responsibility & Ethics in Wash. v. DOJ*,
436 F. Supp. 3d 354 (D.D.C. 2020) ........ 11
*C*itizens for Resp.& Ethics in Wash. v. FE*C* ("*CREW*"),
711 F.3d 180 (D.C. Cir. 2013) ........ 10, 13
*Daily Caller v. Dep't of State*,
152 F. Supp. 3d 1 (D.D.C. 2015) ........ 9, 14, 26, 27

*Damus v. Nielsen*,
313 F. Supp. 3d 317 (D.D.C. 2018) .... 6
*Davis v. Pension Ben. Guar. Corp.*,
571 F.3d 1288 (D.C. Cir. 2009) .... 6, 7
*Dellinger v. Bessent*,
No. 25-5028, 2025 WL 559669 (D.C. Cir. Feb. 15, 2025) .... 6
*Dorfmann v. Boozer*,
414 F.2d 1168 (D.C. Cir. 1969) .... 25
*EPIC v. Dep't of Justice*,
15 F. Supp. 3d 32 (D.D.C. 2014) .... 22, 23, 25
*Farris v. Rice*,
453 F. Supp. 2d 76 (D.D.C. 2006) .... 8
*Food Mktg. Inst. v. Argus Leader Media*,
588 U.S. 427 (2019) .... 13
*Forsham v. Harris*,
445 U.S. 169 (1980) .... 23
*Gelb v. Dep't of Def.*, Civ. A.,
No. 23-0995 (JMC), 2025 WL 49882 (D.D.C. 2025) .... 23
*Gelb v. Dep't of Def.*,
No. 25-5005, 2025 WL 1719448 (D.C. Cir. Jun. 12, 2025) .... 9
*Glines v. Dep't of Def.*,
Civ. A. No. 24-1222 (TSC), 2025 WL 1207085 (D.D.C. Apr. 25, 2025) .... 27
*Harrington v. FDA*,
581 F. Supp. 3d 145 (D.D.C. 2022) .... 10, 19
*Gordon v. Holder*,
632 F.3d 722 (D.C. Cir. 2011) .... 6, 22
*Hall v. CIA*,
668 F. Supp. 2d 172 (D.D.C. 2010) .... 15
*Heritage Found. v. CIA*, Civ. A.,
No. 23-3810 (TJK), 2025 WL 485406 (D.D.C. Feb. 13, 2025) .... 11
*Heritage Found. v. Dep't of Justice*,
Civ. A. No. 23-1854 (DLF), 2023 WL 4678763 (D.D.C. July 19, 2023) .... 22
*Heritage Found. v. Dep't of State*,
Civ. A. No. 24-2862 (TJK), 2024 WL 4607501 (D.D.C. Oct. 29, 2024) .... 18, 19, 28
*Heritage Found. v. EPA*, Civ. A.,
No. 23-0748 (JEB), 2023 WL 2954418 (D.D.C. Apr. 14, 2023) .... 25
*Hilton v. Braunskill*,
481 U.S. 770 (1987) .... 28
*Howell v. Dept. of Homeland Sec.*, Civ. A.,
No. 24-2791 (JMC), 2024 WL 4582978 (D.D.C. Oct. 25, 2024) .... 12
*Huisha-Huisha v. Mayorkas*,
27 F.4th 718 (D.C. Cir. 2022) .... 8
*Hunter v. FERC*,
527 F. Supp. 2d 9 (D.D.C. 2007) .... 17
*Judicial Watch v. FBI*,
Civ. A. No. 01-1216 (RBW), 2002 WL 34339771 (D.D.C. July 26, 2002) .... 11

*Lamb v. Millennium Challenge Corp.*,
228 F. Supp. 3d 28 (D.D.C. 2017) ........ 9
*League of Women Voters of U.S. v. Newby*,
838 F.3d 1 (D.C. Cir. 2016) ........ 8
*Make the Road N.Y. v. Mullin*,
179 F.4th. 16 (D.C. Cir. 2026) ........ 7
*Martinez v. Bureau of Prisons*,
444 F.3d 620 (D.C. Cir. 2006) ........ 8
*Martinez-Andino v. U.S. Department of Homeland Security*,
Civ. A No. 26-1208, 2026 WL 1801137 (D.D.C. June 23, 2026) ........ 6
*Morales v. Sec'y of State*,
220 F. Supp. 3d 1 (D.D.C. 2016) ........ 11, 20
*Mott Thoroughbred Stables, Inc. v. Rodriguez*,
87 F. Supp. 3d 237 (D.D.C. 2015) ........ 17
*N.Y. Times Co. v. Def. Health Agency*,
Civ. A. No. 21-0566 (BAH), 2021 WL 1614817 (D.D.C. Apr. 25, 2021) ........ 10, 25, 26
*Nat'l Sec. Counselors v. CIA*,
969 F.3d 406 (D.C. Cir. 2020) ........ 23
*Nation Mag. v. Dep't of State*,
805 F. Supp. 68 (D.D.C. 1992) ........ 14
*National Public Radio, Inc. v. Department of Treasury*,
Civ. A. No. 19-0017 (JDB), 2021 WL 1850696 (D.D.C. Mar. 31, 2021) ........ 15
*Nat'l Sec. Counselors v. CIA*,
898 F. Supp. 2d 233 (D.D.C. 2012) ........ 24
*Newdow v. Bush*,
355 F. Supp. 2d 265 (D.D.C. 2005) ........ 22
*Nken v. Holder*,
556 U.S. 418 (2009) ........ 6, 24
*NLRB v. Robbins Tire & Rubber Co.*,
437 U.S. 214 (1978) ........ 27
*NLRB v. Sears, Roebuck & Co.*,
421 U.S. 132 (1975) ........ 13, 23
*Pantoja v. Martinez*,
No. 21-7118, 2022 WL 893017 (D.C. Cir. 2022) ........ 8
*Phang v. Blanche*,
836 F. Supp. 3d 90 (D.D.C. 2026) ........ 24
*Protect Democracy Project, Inc. v. Dep't of Def.*,
263 F. Supp. 3d 293 (D.D.C. 2017) ........ 25, 26
*Protect Democracy Project, Inc. v. Dep't of Justice*,
498 F. Supp. 3d 132 (D.D.C. 2020) ........ 18, 26, 27, 28
*Rockwell Int'l Corp. v. Dep't of Just.*,
235 F.3d 598 (D.C. Cir. 2001) ........ 13
*Rudometkin v. United States*,
140 F.4th 480 (D.C. Cir. 2025) ........ 12
*Santos v. Collins*, Civ. A.,
No. 24-1759 (JDB), 2025 WL 1823471 (D.D.C. Feb. 26, 2025) ........ 16

*Scottsdale, Capital Advisors Corp. v. Fin. Indus. Regul. Auth. Inc.*,
678 F. Supp. 3d 88 (D.D.C. 2023) ........ 6
*Sherley v. Sebelius*,
644 F.3d 388 (D.C. Cir. 2011) ........ 7
*Sierra Club v. Dep't of Energy*,
825 F. Supp. 2d 142 (D.D.C. 2011) ........ 17, 18
*Singh v. Carter*,
185 F. Supp. 3d 11 (D.D.C. 2016) ........ 7
*Starbucks Corp. v. McKinney*,
602 U.S. 339 (2024) ........ 7
*Trudeau v. FTC*,
456 F.3d 178 (D.C. Cir. 2006) ........ 9
*United States Ass'n of Reptile Keepers, Inc. v. Zinke*,
852 F.3d 1131 (D.C. Cir. 2017) ........ 7
*Univ. of Tex. v. Camenisch*,
451 U.S. 390 (1981) ........ 6, 25
*Weinberger v. Romero-Barcelo*,
456 U.S. 305 (1982) ........ 24
*Winter v. Nat. Res. Def. Council, Inc.*,
555 U.S. 7 (2008) ........ 6
*Wis. Gas Co. v. FERC*,
758 F.2d 669 (1985) ........ 17

**Statutes**

2 U.S.C. § 7 ........ 20
5 U.S.C. § 552(a)(6)(A)(i) ........ 9
5 U.S.C.A. § 552(a)(6)(E) ........ 10

**Rules and Regulations**

Fed. R. Civ. P. 65(c) ........ 29
28 C.F.R. § 16.4(d) ........ 15, 16
28 C.F.R. § 16.5 ........ 10
28 C.F.R. § 16.5(e) ........ 4
28 C.F.R. § 16.5(e)(1) ........ 10
28 C.F.R. § 16.5(e)(3) ........ 10

## INTRODUCTION

Plaintiff National Association for the Advancement of Colored People ("NAACP") filed this lawsuit under the Freedom of Information Act ("FOIA") on October 2, 2026, which was followed shortly thereafter by a motion for emergency relief seeking to have the Department of Justice ("DOJ") produce the records requested in its 20-part FOIA request in the four weeks before Election Day. Plaintiff's argument is as follows: its FOIA request seeks records related, in part, to DOJ's election monitoring in the upcoming 2026 midterm election; the election will take place in the next month; emergency relief is warranted to ensure that it obtains these records in advance of the election. In support of its motion, Plaintiff invokes the "urgency" of its request. But Plaintiff's request, actions, and filings belie such invocation, and warrant denial of the motion.

Plaintiff did not seek expedited processing when it submitted its FOIA request on September 1, 2026, or even describe a compelling need for the records requested. Plaintiff cannot plausibly contend that this Court must *order* expedited processing, having not previously sought the relief it now demands for the first time through litigation. Plaintiff's request, moreover, goes beyond a request for expedited processing—which when granted requires only that an agency process records "as soon as practical"—to seeking the immediate production of all records requested in an exceedingly broad request, covering twenty categories. On their face, those categories implicate various FOIA exemptions that will necessitate consultation with several other agencies. Moreover, the categories demand the creation of records that do not exist. In short, FOIA does not provide a basis for the relief Plaintiff seeks from this Court.

Plaintiff's actions likewise undermine its claimed emergency. Plaintiff argues that the emergency underlying its motion is DOJ's expanded efforts to recruit election monitors and, in so doing, allegedly to engage in "potential [election] interference" and "suppression of [the] right" to vote. But Plaintiff also states that it fully knew of DOJ's election monitoring efforts fifty days

prior to filing this action and the accompanying motion—as confirmed by extensive public reporting on DOJ's election monitoring. Plaintiff has not justified its delay in submitting its FOIA request or seeking injunctive relief from this Court.

Far from remedying these basic failures, Plaintiff's emergency motion underscores them by highlighting the disconnect between the records requested and the harm alleged. Although some courts have found that an impending election may be an event supporting a claim for emergency relief, a plaintiff still must connect the relief requested to the harm alleged. Here, Plaintiff's motion expresses concern over potential impingement of the right to vote but wholly fails to state or explain how the relief requested will "actually prevent" such harm. So alleged, Plaintiff's request merely relies on the imminence of the event (Election Day) and the importance of the right implicated (voting) to assert an emergency. But that is not enough.

As a result, Plaintiff fails to establish a likelihood of success on the merits and fails to establish irreparable harm. Further, the balance of the equities and the public interest weigh against the emergency relief sought. It is not in the public's interest to allow Plaintiff to jump the line ahead of other requesters. And requiring DOJ to process records at the impracticable pace Plaintiff demands puts at risk the public interest in ensuring that only non-exempt material is released.

For these reasons, Defendant respectfully requests that the Court deny NAACP's motion for a preliminary injunction and permit the parties to file a joint status report in sixty days.

## BACKGROUND

### I. <u>Factual Background.</u>

On September 1, 2026, Plaintiff submitted a FOIA request to DOJ's Civil Rights Division ("CRT"), seeking twenty broad categories of records concerning "any and all [DOJ] deployments of election monitors in [specified] primary elections, any and all deployments of election monitors in 2026 to jurisdictions [other than those specified], and any and all anticipated DOJ deployments

of election monitors in the upcoming November 3, 2026, midterm election." Compl. ¶¶ 5, 29; *see also* Ex. A to Compl. (NAACP FOIA Request) (ECF No. 1-1). Categories ranged from the general—e.g., "Information used to internally identify the jurisdictions where election monitors are to be deployed in the midterm general election," Compl. ¶ 29.h.—to the more targeted—e.g., "Comprehensive list of locations of deployment," *id.* ¶ 29.g. Some explicitly sought "legal advice and analysis," *id.* ¶ 29.b., others appeared to call on DOJ to create records in response, *see, e.g.*, *id.* ¶ 29.o. ("Confirmation of whether Florida attorney David Michael Levin . . . is now . . . an employee of [DOJ] . . . ."). Plaintiff also requested a fee waiver. *See* Ex. A to Compl. at 4-5. Notably, however, Plaintiff neither requested expedited processing, nor did it provide a detailed description of its need for the records. *See* Ex. A to Compl.; Decl. of John P. Buchko ("Buchko Decl.") ¶ 9.

On September 2, 2026, CRT received Plaintiff's FOIA request and, on September 21, 2026, acknowledged receipt. *See* Ex. B to Compl. (CRT email acknowledgment). CRT's acknowledgment advised Plaintiff that, "[t]o ensure that requesters are treated fairly, [CRT] processes requests in the approximate order of receipt," assured Plaintiff that its request would be "handled as equitably and promptly as possible," and provided Plaintiff with a CRT contact for seeking updates on the status of its request. *Id.* In addition, the acknowledgement advised Plaintiff that its fee waiver was under consideration. *Id.* On the same day as its acknowledgement, CRT initiated the search process for responsive records by assigning its Voting Rights Section ("VOT") a copy of the request and instructions to locate and provide responsive records and/or identify search terms for an electronic search. Buchko Decl. ¶ 11. At this time these search efforts are ongoing. *Id.*

CRT has received no further communications from Plaintiff regarding its FOIA request, outside of this litigation. DOJ has issued regulations governing requests for expedited processing with which Plaintiff has not sought to comply. 28 C.F.R. § 16.5(e). To date, Plaintiff has not submitted any request for expedited processing pursuant to those regulations. Buchko Decl. ¶ 9.

## II. Procedural Background.

On October 2, 2026, Plaintiff filed its Compliant initiating this action. ECF No. 1. Plaintiff's Complaint alleges CRT violated FOIA by failing to make a determination on its request within twenty working days. *Id.* ¶¶ 31-38. Plaintiff acknowledges that FOIA does not require CRT "to produce the documents [requested] within the 20-[working-]day period," *id.* ¶ 33, but nonetheless requests this Court "[i]ssue a Writ of Mandamus ordering [CRT] to immediately identify, produce, and release the records requested." *Id.* ¶ 57.d. In addition to this "emergency relief," *id.* ¶¶ 20-21,[1] Plaintiff's Complaint asks this Court to, among other things, order Defendant "to preserve all records, in whatever form they exist, potentially responsive to Plaintiff's request" and "grant Plaintiff's request for fee waivers [*sic*]." *Id.* ¶ 57a.-b.

On October 5, 2026, Plaintiff filed a "Motion for Emergency Relief." ECF No. 5; *see also* ECF No. 5-1 ("Pl.'s Mem.").[2] In furtherance of the alleged urgency of its request, Plaintiff notes

---

[1] Plaintiff's Complaint refers to the requested writ of mandamus as "emergency" relief, *id.* ¶ 8, while also stating that it seeks additional, unspecified "emergency relief." *Id.* ¶ 57 (requesting both that the Court issue the aforementioned writ and "grant the Plaintiff's additional request for emergency relief"). Defendant is unaware of the unarticulated further "emergency relief" that Plaintiff purports to seek through its Complaint.

[2] Plaintiff docketed its motion as an "Emergency Motion for Temporary Restraining Order," *see* Dkt.; *see also* ECF No. 5-1 at 12 (Certificate of Service referencing LCvR 65.1(a)), but captioned its motion as a "Motion for Emergency Relief." ECF No. 5 at 1. Given this ambiguity and given that temporary restraining orders ("TROs") are limited in duration while the Court considers a motion for a preliminary injunction, Defendant construes Plaintiff's motion as a combined motion for a TRO and for a preliminary injunction.

that DOJ has participated in election monitoring for many elections across many years. *See* Pl.'s Mem. at 3; *see also* Compl. ¶ 22. However, Plaintiff asserts, while that monitoring has "historically prohibited the use of criminal prosecutors and any law enforcement personnel (e.g., FBI staff)," now DOJ is not prohibiting the use of such staff and is "aggressively recruiting a number of poll monitors." Pl.'s Mem. at 3, 5. From this—the alleged non-exclusion of criminal prosecutors and law enforcement personnel, and the potential increased number of volunteers—Plaintiff speculates that Defendant intends to engage in "potential [election] interference" and "suppression of [the] right" to vote. Pl.'s Mem. at 8.

Plaintiff states that the irreparable harm it will suffer absent emergency relief is "both with regards to the substantive issue of Defendant's plans to dispatch its employees in a manner that has the outcome of suppressing a fundamental right, *and* the complete lack of redress and mootness of the FOIA request following November 3, 2026"—i.e., the date of the midterm election. Pl.'s Mem. at 9 (emphasis in original). Addressing the balance of equities, Plaintiff references "[t]he right to vote free from intimidation and the right to ensure that elections are carried out free from federal interference on the part of [] Defendant." *Id.* at 9-10. Addressing the public interest, Plaintiff states that "[t]he public will benefit substantially from the information requested by Plaintiff." *Id.* at 10. For relief, Plaintiff again asks the Court to order Defendant to "immediately begin to identify, produce and release the records requested by Plaintiff's FOIA request; preserve all records, in whatever form they exist, potentially responsive to Plaintiff's FOIA request prior and during the processing of its request; and grant Plaintiff's request for fee waivers to the underlying FOIA request," while further asking that the Court order the completion of these actions within one week of its order. *Id.* at 10-11.

For the reasons set forth below, Plaintiff's motion should be denied.

## LEGAL STANDARD

"The standard for obtaining either a TRO or a preliminary injunction is identical." *Martinez-Andino v. U.S. Department of Homeland Security*, Civ. A No. 26-1208, 2026 WL 1801137, at *7 (D.D.C. June 23, 2026) (quoting *Dellinger v. Bessent*, No. 25-5028, 2025 WL 559669, at *3 (D.C. Cir. Feb. 15, 2025) (citing *Gordon v. Holder*, 632 F.3d 722, 723–24 (D.C. Cir. 2011))).

A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). To obtain such emergency relief, the movant must show that (1) "he is likely to succeed on the merits"; (2) "he is likely to suffer irreparable harm in the absence of preliminary relief"; (3) "the balance of equities tips in his favor"; and (4) "an injunction is in the public interest." *Id*. at 20. The latter two factors "merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009). A "court must be persuaded as to all four factors." *Scottsdale Capital Advisors Corp. v. Fin. Indus. Regul. Auth. Inc.,* 678 F. Supp. 3d 88, 100 (D.D.C. 2023). "The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held" and it is "generally inappropriate for a federal court at the preliminary injunction stage to give a final judgment on the merits." *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 397 (1981).

Plaintiff agrees, as it must, that it must satisfy each of the *Winter* factors. Pl.'s Mem. at 7 (citing *Winter*, 555 U.S. at 20). Before *Winter*, courts weighed these factors on the movant-friendly "sliding scale," allowing "an unusually strong showing on one of the factors" to overcome a weaker showing on another. *Damus v. Nielsen*, 313 F. Supp. 3d 317, 326 (D.D.C. 2018) (quoting *Davis v. Pension Ben. Guar. Corp.*, 571 F.3d 1288, 1291-92 (D.C. Cir. 2009)). Following *Winter*, courts have recognized that the sliding scale approach is no longer viable and that each of the

factors is now an "independent, free-standing requirement." *Sherley v. Sebelius*, 644 F.3d 388, 392-93 (D.C. Cir. 2011); *see also Singh v. Carter*, 185 F. Supp. 3d 11, 16-17 (D.D.C. 2016) (sliding scale approach is "highly questionable," and a plaintiff "bears the burden of persuasion on all four preliminary injunction factors"). Therefore, the Court may not use the "sliding scale" analysis to grant Plaintiff's emergency relief request because "[t]he default rule is that a plaintiff seeking a preliminary injunction must make a clear showing" as to each *Winter* element. *Starbucks Corp. v. McKinney*, 602 U.S. 339, 346 (2024). The D.C. Circuit has not had occasion to conclusively decide whether that sliding scale survives *Winter* and *Nken* but has denied preliminary relief where the movant could not satisfy even the sliding scale approach. *See Make the Road N.Y. v. Mullin*, 179 F.4th. 16, 25 (D.C. Cir. 2026) ("Nor do we need to decide so today because Make the Road has not satisfied the more movant-friendly, sliding-scale standard."); *see also Davis*, 571 F.3d at 1292 ("We need not decide whether a stricter standard applies, because the pilots fail even under the 'sliding scale' analysis of *Davenport*."). Thus, the Court could deny Plaintiff's motion if the Court finds that Plaintiff does not satisfy the "sliding scale" approach.

If the Court concludes that a claim fails as a matter of law, on a point of jurisdiction or merits, then a preliminary injunction must be denied. *See United States Ass'n of Reptile Keepers, Inc. v. Zinke*, 852 F.3d 1131, 1135 (D.C. Cir. 2017). Indeed, if the Court "concludes that it lacks subject-matter jurisdiction, the court must dismiss the complaint in its entirety." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006). Further, because preliminary injunctions are not "awarded as of right," but "[a]s a matter of equitable discretion, a preliminary injunction does not follow as a matter of course from a plaintiff's showing of a likelihood of success on the merits." *Benisek v. Lamone*, 585 U.S. 155, 158 (2018). A showing of a strong likelihood of success on the merits still leads to the denial of preliminary injunctive relief where the party fails to make a sufficient

showing of irreparable injury. *CityFed Fin. Corp. v. Off. of Thrift Supervision*, 58 F.3d 738, 747 (D.C. Cir. 1995); *see also Huisha-Huisha v. Mayorkas*, 27 F.4th 718, 733 (D.C. Cir. 2022) ("Because the Plaintiffs are likely to succeed on the merits of their § 1231 claims, we apply the other preliminary injunction factors to decide whether the Plaintiffs are entitled to relief on those claims").

Finally, where, as here, a party "seeks a mandatory injunction—to change the status quo through action rather than merely to preserve the status quo—typically the moving party must meet a higher standard than in the ordinary case: the movant must show 'clearly' that [he] is entitled to relief or that extreme or very serious damage will result." *Farris v. Rice*, 453 F. Supp. 2d 76, 78 (D.D.C. 2006); *Pantoja v. Martinez*, No. 21-7118, 2022 WL 893017, at *1 (D.C. Cir. 2022) (per curiam) (characterizing an injunction that would reinstate the plaintiff in prior leadership roles as a "mandatory preliminary injunction ... requir[ing] a higher standard than an ordinary preliminary injunction"); *but see League of Women Voters of U.S. v. Newby*, 838 F.3d 1, 7 (D.C. Cir. 2016) (rejecting distinction between a mandatory and prohibitory injunction).

## ARGUMENT

### I. Plaintiff Fails to Demonstrate a Likelihood of Success on the Merits Because CRT Has Been Exercising Diligence in Processing the Request.

#### A. Plaintiff Names the Wrong Defendant.

As an initial matter, Plaintiff names as defendant an official who should be dismissed. Specifically, Plaintiff names Harmeet Dhillon, in her official capacity as Assistant Attorney General, as the sole defendant. *See* Compl. at 1. However, "no cause of action exists that would entitle [a plaintiff] to relief" from named individual defendants under FOIA. *Martinez v. Bureau of Prisons*, 444 F.3d 620, 624 (D.C. Cir. 2006) (FOIA "concern[s] the obligations of agencies as distinct from individual employees in those agencies"). Courts routinely dismiss individual

defendants from FOIA cases. *See Gelb v. Dep't of Def.*, No. 25-5005, 2025 WL 1719448 (D.C. Cir. Jun. 12, 2025) (summarily affirming dismissal); *see also Competitive Enterprise Institute v. Podesta*, 643 F. Supp. 3d 121, 126-27 (D.D.C. 2022); *Lamb v. Millennium Challenge Corp.*, 228 F. Supp. 3d 28, 35 (D.D.C. 2017). Since the complaint would not survive a motion to dismiss, the Court may deny the motion for preliminary injunction on that basis alone. *See Trudeau v. FTC*, 456 F.3d 178, 182 n.2 (D.C. Cir. 2006) (affirming denial of a preliminary injunction where the district court dismissed the complaint under Rule 12).

### B. CRT's Failure to Make a Determination on Plaintiff's FOIA Request Within Twenty Working Days Does Not Entitle Plaintiff to Relief

Plaintiff's sole argument that it is likely to succeed on the merits is that CRT has failed to make a determination within twenty working days of Plaintiff's request. *See* Pl.'s Mem. at 7-8. But "this fact does not conclusively demonstrate that the plaintiff is likely to prevail in its underlying effort to accelerate the processing of its FOIA request[] and the ultimate production of any responsive, non-exempt records." *Daily Caller v. Dep't of State*, 152 F. Supp. 3d 1, 11 (D.D.C. 2015).

A plaintiff does not show substantive entitlement to records merely because an agency fails to make a determination within twenty working days of the request:

> [A]ny alleged failure by the defendants to respond within the 20-day statutory deadline, under 5 U.S.C. § 552(a)(6)(A)(i), does not entitle plaintiff to immediate processing and production. Rather, as the D.C. Circuit has explained, "[i]f the agency does not adhere to FOIA's explicit timelines, the 'penalty' is that the agency cannot rely on the administrative exhaustion requirement to keep cases from getting into court."
>
> In short, plaintiff appears to misapprehend the way in which the FOIA operates. While agencies have 20 working days to "make a 'determination' with adequate specificity, such that any withholding can be appealed administratively," the consequence of agency delay in rendering such a determination bears only on the requester's ability to get into court.

*N.Y. Times Co. v. Def. Health Agency*, Civ. A. No. 21-0566 (BAH), 2021 WL 1614817, at *5 (D.D.C. Apr. 25, 2021) (quoting *Citizens for Resp. & Ethics in Wash. v. FEC* ("*CREW*"), 711 F.3d 180, 189 (D.C. Cir. 2013); other citations and footnote omitted); *accord Harrington v. FDA*, 581 F. Supp. 3d 145, 152 (D.D.C. 2022). Moreover, CRT is exercising due diligence in its processing of Plaintiff's request, which is "broad and complex," likely implicates multiple FOIA exemptions, and will warrant consultation with other agencies whose equities are implicated. Buchko Decl. ¶ 14. CRT already has initiated a search by instructing VOT to provide responsive records and/or identify search terms for an electronic search. *Id.* ¶ 11. That process is ongoing and CRT is working diligently to complete its processing of Plaintiff's request. *Id.* ¶¶ 11, 16.

### C. Plaintiff Is Not Entitled to Expedited Processing Because It Has Not Requested Expedited Processing

Additionally, FOIA requires each agency to "promulgate regulations, pursuant to notice and receipt of public comment, providing for expedited processing of requests for records." 5 U.S.C. § 552(a)(6)(E). DOJ's regulations are located at 28 C.F.R. § 16.5. Under those regulations, expedited processing may be granted when one of four circumstances exist:

> (i) Circumstances in which the lack of expedited processing could reasonably be expected to pose an imminent threat to the life or physical safety of an individual;
>
> (ii) An urgency to inform the public about an actual or alleged Federal Government activity, if made by a person who is primarily engaged in disseminating information;
>
> (iii) The loss of substantial due process rights; or
>
> (iv) A matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity that affect public confidence.

28 C.F.R. § 16.5(e)(1). To obtain expedited processing, a requester generally "must submit a statement, certified to be true and correct, explaining in detail the basis for making the request for expedited processing." 28 C.F.R. § 16.5(e)(3). Remarkably, Plaintiff's request here did not

include a request for expedited processing. *See* Ex. A to Compl. Indeed, Plaintiff's request mentions no time limitation or urgency, nowhere describes a compelling need for the records, and was not certified. *See id.*; *see also* Buchko Decl. ¶ 9; *Heritage Found. v. CIA*, Civ. A. No. 23-3810 (TJK), 2025 WL 485406, at *4 (D.D.C. Feb. 13, 2025) ("Plaintiffs did not satisfy the certification requirement when they requested expedited processing based on compelling need, so they were not entitled to that processing."). And Plaintiff has not subsequently requested expedited processing. *See* Buchko Decl. ¶ 9. Accordingly, "to the extent Plaintiff[ may belatedly] claim[] that [it was] wrongfully denied expedited processing of [its] FOIA request, that claim fails for the obvious reason that Plaintiff[] . . . did not request expedited processing." *Morales v. Sec'y of State*, 220 F. Supp. 3d 1, 5 (D.D.C. 2016).

Under FOIA, moreover, any request for expedited processing must be made to the agency before judicial review of such a request is sought. 5 U.S.C. § 552(a)(6)(E)(ii) and (iii). Among other things, an agency receiving such a request is afforded ten days to make a determination on the request, *id.* § 552(a)(6)(E)(ii), and an agency's determination on such a request, or failure to respond in a timely manner, "shall be subject to judicial review . . . based on the record before the agency at the time of the determination," *id.* § 552(a)(6)(E)(iii).[3] Here, Plaintiff has failed to make any expedited processing request to the agency in accordance with applicable regulations and instead has sought to circumvent that process by raising the issue for the first time in litigation.

[3] Although courts have held (i) that a requester need not file an administrative appeal of an agency's denial of an expedited processing request that the FOIA requester actually made to the agency before the requester seeks judicial review of the denial, *Citizens for Responsibility & Ethics in Wash. v. DOJ*, 436 F. Supp. 3d 354, 359 (D.D.C. 2020), and (ii) that judicial review also is available for the failure of an agency to timely respond to an expedited processing request, *Judicial Watch v. FBI*, Civ. A. No. 01-1216 (RBW), 2002 WL 34339771, at *3 (D.D.C. July 26, 2002), those are markedly different questions than whether this Plaintiff can seek a court order for expedited processing without ever making a request for expedited processing at the administrative stage.

Accordingly, the issue of whether Plaintiff's request should be expedited is not properly before the Court and the motion for emergency relief should be denied on that basis. *See Howell v. Dept. of Homeland Sec.*, Civ. A. No. 24-2791 (JMC), 2024 WL 4582978, at *4 (D.D.C. Oct. 25, 2024) (denying a motion for preliminary injunction when plaintiff's failure to exhaust administrative remedies meant that it "no longer had an active FOIA request that could be considered for expedited processing").

Finally, even had Plaintiff requested expedited processing, that would only have obligated Defendant to "process [records] as soon as practicable"—not by the impractical date that Plaintiff has chosen based on the alleged urgency of Plaintiff's own making that resulted from its failure to act more promptly. 5 U.S.C. § 552(a)(6)(E)(iii); *see also Al-Fayed v. CIA*, 254 F.3d 300, 304 (D.C. Cir. 2001).

Indeed, the Court already identified these fatal flaws when it set a briefing schedule on Plaintiff's motion for preliminary relief. Min. Order (Oct. 6, 2026) ("The Court notes that the Plaintiff's motion does not (1) address why it did not seek expedited processing of its FOIA request, or (2) engage with the governing standards for the extraordinary relief that it seeks (i.e., a mandatory preliminary injunction in a FOIA case)"). While the Court invited Plaintiff to address these deficiencies in its reply, those arguments should be treated as forfeited because Plaintiff did not raise them in its "opening brief" and, thus, Defendant cannot respond to them here. *Rudometkin v. United States*, 140 F.4th 480, 491 (D.C. Cir. 2025) (citing *Cabezas v. FBI*, 109 F.4th 596, 602, 606 (D.C. Cir. 2024)).

**D. Plaintiff Is Not Entitled to the Records Sought by a Date Certain Because Defendant Must First Determine Whether the Documents Are Exempt and Complete the Consultation Process**

FOIA strikes a critical balance between ensuring that government records are produced to requesters and ensuring that confidential, privileged, or otherwise excludable information remains withheld. Here, Plaintiff seeks to short-circuit two different FOIA procedures.

*First*, FOIA's exemptions embody a judgment by Congress that the public interest would be harmed if agencies could not withhold specific kinds of materials. The Supreme Court has emphasized that FOIA exemptions serve "important interests" and are "as much a part of FOIA's purposes and policies as the statute's disclosure requirement." *Food Mktg. Inst. v. Argus Leader Media*, 588 U.S. 427, 439 (2019) (cleaned up). That includes Exemption 5, which shields material of the type that would be privileged in the civil discovery context, such as those protected by the attorney-client privilege, the attorney work-product doctrine, and the deliberative-process privilege. *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 149 (1975); *Rockwell Int'l Corp. v. Dep't of Just.*, 235 F.3d 598, 602 (D.C. Cir. 2001). Here, on its face, Plaintiff's request appears likely to implicate Exemption 5. Buchko Decl. ¶ 14. For instance, Plaintiff's FOIA request seeks "legal advice and analysis (including both formal legal analyses and memoranda, as well as informal electronic communications) regarding the deployment of election monitors at polling places," Compl. ¶ 29.b.; such material likely would be protected under Exemption 5's coverage for the attorney-client and work product privileges. In addition, because the requested records concern ongoing government activities, various inter- and intra-agency records likely will be protected under the deliberative process privilege. Other exemptions, such as 6, 7(A), and 7(C), appear likely to apply, as well. Buchko Decl. ¶ 14. The full extent of these exemptions' application, and potentially others, can only be ascertained through careful examination of the records, which takes time, as the D.C. Circuit has recognized. *See CREW*, 711 F.3d at 189 ("We agree entirely with the

FEC [that it would be a practical impossibility for agencies to process all FOIA requests completely within twenty days]. We are intimately familiar with the difficulty that FOIA requests pose for executive and independent agencies.”).

Complying with Plaintiff’s recently declared deadline—one week from the date of the requested order—would deprive CRT of the ability to ensure the protection of information that Congress exempted from disclosure. *See Daily Caller*, 152 F. Supp. 3d at 14 (“Requiring the agency to process and produce [requested] materials under an abbreviated deadline raises a significant risk of inadvertent disclosure of records properly subject to exemption under FOIA.”); *Baker v. Consumer Fin. Prot. Bureau*, Civ. A. No. 18-2403(CKK), 2018 WL 5723146, at *5 (D.D.C. Nov. 1, 2018) (“Ordering Defendant to process and release documents according to Plaintiff’s timeline risks that, in its haste, Defendant will inadvertently release records which fall under a FOIA exception and Congress has decided should not be released.”). Indeed, at least one court in this District has ruled that, where exemptions are likely to apply, a plaintiff fails to show a likelihood of success on the merits for the purposes of seeking injunctive relief. *Nation Mag. v. Dep’t of State*, 805 F. Supp. 68, 74 (D.D.C. 1992) (“Even if this Court were to direct the speed up of the *processing* of their requests, [Plaintiffs] have not shown at this time that they are entitled to release of the documents they seek. To the contrary, it is undisputed that at least some of the documents requested by plaintiffs are probably exempt from production under the FOIA[.]” (emphasis in original)); *see also Am. Oversight v. Dep’t of State*, 414 F. Supp. 3d 182, 187 (D.D.C. 2019) (holding that the plaintiff would “not be irreparably harmed by further delay if the documents it seeks can be lawfully withheld from disclosure under FOIA’s exemptions”).

*Second*, not only would Plaintiff’s request short-circuit the exemption process, but it would also short-circuit the consultation process as well. An agency or component’s ability to consult

with another agency or component about records that implicate the interests and expertise of that second component or agency is baked into FOIA and its regulations. Congress expressly allowed an agency to consult "with another agency having a substantial interest in the determination of the request or among two or more components of the agency having substantial subject-matter interest therein" and considered that to be an appropriate reason to extend the time to respond. 5 U.S.C. § 552(a)(6)(B)(iii)(III). In turn, DOJ has promulgated a regulation requiring the receiving component to determine whether another agency "is better able to determine whether the record is exempt from disclosure under the FOIA." 28 C.F.R. § 16.4(d). The regulations provide for consultation (or referral) in that circumstance. *See id.*

A court's role is to ensure that an agency takes affirmative steps to ensure that its consultations are being processed—not to foreclose or truncate consultations based on belated demands by a plaintiff. *See Hall v. CIA*, 668 F. Supp. 2d 172, 182 (D.D.C. 2010) (holding, in the parallel context of FOIA referrals, as opposed to consultations, that an agency should "take affirmative steps to ensure that its referrals are being processed"). For instance, in *National Public Radio, Inc. v. Department of Treasury*, Civ. A. No. 19-0017 (JDB), 2021 WL 1850696, at *1 (D.D.C. Mar. 31, 2021), a requester grew tired of how long consultations were taking and moved to compel the Treasury Department to produce records notwithstanding the agency's outstanding interagency consultation requests. The court, "sensitive to the countervailing interests at stake which may require input from agencies outside Treasury," rejected plaintiff's motion. *Id.* at *2.

Here, Plaintiff's FOIA request seeks information implicating the equities of other agencies, including the Federal Bureau of Investigation ("FBI"), the Department of Homeland Security, Immigration and Customs Enforcement, and likely others. *See* Buchko Decl. ¶ 14; *see, e.g.*, Compl. ¶ 29.q. Under DOJ regulations, CRT would thus be required to consult with these agencies

in processing Plaintiff's request. *See* 28 C.F.R. § 16.4(d). That consultation process cannot be short-circuited; it is needed, among other things, "to determine the applicability of" FOIA exemptions, *Cause of Action Inst. v. Eggleston*, 224 F. Supp. 3d 63, 73 (D.D.C. 2016), by another component or agency "better able to [make such] determin[ation]." 28 C.F.R. § 16.4(d). The Court should not allow Plaintiff to sidestep this important step in CRT's compliance with FOIA.

## II. Plaintiff Has Not Established Irreparable Harm.

The D.C. Circuit "has set a high standard for irreparable injury." *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006). "[I]rreparable harm requires not only a concrete, particularized harm, but a harm that is sufficiently serious and irremediable so as to warrant the extraordinary relief of a court's intervention in a case before factual and legal development." *Santos v. Collins*, Civ. A. No. 24-1759 (JDB), 2025 WL 1823471, at *6 (D.D.C. Feb. 26, 2025). A plaintiff has the burden to put forth sufficient evidence to satisfy this high standard. "The movant cannot simply make 'broad conclusory statements' about the existence of harm. Rather, [the movant] must 'submit[ ] . . . competent evidence into the record . . . that would permit the Court to assess whether [the movant], in fact, faces irreparable harm[.]'" *Aviles-Wynkoop v. Neal*, 978 F. Supp. 2d 15, 21 (D.D.C. 2013) (quoting *Cornish v. Dudas*, 540 F. Supp. 2d 61, 65 (D.D.C. 2008)).

Plaintiff contends it will suffer irreparable harm in two ways, absent emergency judicial relief: "Plaintiff . . . is likely to suffer irreparable harm both with regards to the substantive issue of Defendant's plans to dispatch its employees in a manner that has the outcome of suppressing a fundamental right, *and* the complete lack of redress and mootness of the FOIA request following November 3, 2026." Pl.'s Mem. at 9 (emphasis in original). Plaintiff's conclusory contentions are without merit. First, Plaintiff fails to connect the records requested to the harm alleged, and thus fails to plead that the relief sought will actually prevent irreparable harm. Second, Plaintiff's

own actions undermine its claim of irreparable harm; in its request, Plaintiff did not seek expedited processing or describe any time sensitivity or urgency. Instead, Plaintiff waited 50 days after the basis for its asserted harm became apparent before serving the instant motion. Third, there can be no irreparable injury, as here, where the records sought are likely to be withheld or substantially redated, or do not yet exist (and, as such, would have to be created). For these reasons, Plaintiff cannot meet the "high standard" for demonstrating irreparable injury.

**A. Plaintiff Fails to Connect the Records Requested to the Harm Alleged**

To establish irreparable harm, a plaintiff must show that "the alleged harm will directly result from the action which the movant seeks to enjoin." *Wis. Gas Co. v. FERC*, 758 F.2d 669, 674 (1985). In other words, Plaintiff must make a clear showing that the injunction "will alleviate the threat of irreparable harm." *Hunter v. FERC*, 527 F. Supp. 2d 9, 15 (D.D.C. 2007); *see also Ass'n of Flight Attendants v. Pension Benefit Guar. Corp.*, 372 F. Supp. 2d 91, 101 (D.D.C. 2005) (finding no irreparable injury where it was unclear whether granting an injunction would curtail the alleged injury). "Thus, a preliminary injunction is particularly ill-suited [where] it would not necessarily redress the alleged irreparable harm." *Mott Thoroughbred Stables, Inc. v. Rodriguez*, 87 F. Supp. 3d 237, 247 (D.D.C. 2015); *see also Sierra Club v. Dep't of Energy*, 825 F. Supp. 2d 142, 153 (D.D.C. 2011) ("It would make little sense for a court to conclude that a plaintiff has shown irreparable harm when the relief sought would not actually remedy that harm."). "The inquiry must be whether the plaintiff has shown that the relief sought will actually prevent irreparable harm." *Sierra Club*, 825 F. Supp. 2d at 153.

Plaintiff's motion fails at the state because it does not satisfy this fundamental requirement. In its limited discussion of irreparable harm, Plaintiff observes the importance of the right to vote, and the harm caused by impinging on that right. *See* Pl.'s Mem. at 8. Plaintiff also states that its request is purportedly tied to Election Day. *See id.* at 9. Plaintiff concludes that each of these

items "is a form of irreparable harm." *Id.* But Plaintiff's motion, *see id.* at 7-8, wholly fails to connect the relief sought (i.e., CRT's release of all the records sought) to either (i.e., impingement of the right to vote, Election Day), so as to establish that such relief "will actually prevent irreparable harm." *Sierra Club*, 825 F. Supp. 2d at 153. Put more directly: How will the release of the records sought by Plaintiff "actually prevent" impingement of the right to vote? And how is the "FOIA request being tied to the planning of Defendant for the pending Election Day" itself a "form of irreparable harm"? Plaintiff offers no explanation, and none can be inferred. Plaintiff does not even attempt to identify those portions of its expansive request, seeking 20 separate categories of records, that it contends require immediate release, in contrast to those portions that it contends are less urgent. It thus asks this Court to accept the implausible assertion that the immediate release of *all* categories of records is necessary to prevent the alleged harm.

Although, in certain circumstances, a plaintiff may plausibly allege harm based on the withholding of records it states it needs to disseminate in advance of Election Day, *see, e.g.*, *Protect Democracy Project, Inc. v. Dep't of Justice*, 498 F. Supp. 3d 132, 142 (D.D.C. 2020), the mere invocation of Election Day and voting are, both separately and in combination, insufficient to demonstrate irreparable harm. The records sought must still be "so highly relevant to" the event "that their value would be lost—and such that irreparable harm would result—if they were disclosed afterward." *Heritage Found. v. Dep't of State*, Civ. A. No. 24-2862 (TJK), 2024 WL 4607501, at *5 (D.D.C. Oct. 29, 2024). "Holding otherwise would mean that the identification of almost *any* imminent event would be a basis for preliminary relief ordering production of records having some potential connection to that event. An open season for preliminary injunctions requiring processing by an election date for almost any political issue before that election would follow." *Id.*

Here, although Plaintiff contends that its FOIA request becomes "moot[] . . . following November 3, 2026," it provides no facts that would support such a conclusion. Neither Plaintiff's motion, nor its request, expresses that Plaintiff intends to, for example, disseminate the requested records to inform voters about its concerns. *See generally* Pl.'s Mem.; Ex. A to Compl.[4] Indeed, rather than assert an information-based harm, Plaintiff appears to assert a voting-based harm, *see* Pl.'s Mem. at 8-9. And even then, Plaintiff does not demonstrate, or even argue, that the records sought are "so highly relevant to" protect the right to vote or explain why it needs these records before Election Day. *See id.*

### B. Plaintiff's Own Actions Undermine Its Claim for Irreparable Injury

Moreover, Plaintiff's own actions undermine its claim for irreparable injury. As noted above, Plaintiff failed to request expedited processing, or describe any time sensitivity, at the time of its FOIA request to DOJ and has failed to request expedited processing at any time in the several weeks since. This shows a plain lack of urgency. *See, e.g.*, *Harrington v. FDA*, 581 F. Supp. 3d 145, 151 (D.D.C. 2022) (holding that it was inappropriate for Plaintiff to "jump the line" because Plaintiff "did not so much as seek expedited processing"); *Morales*, 220 F. Supp. 3d at 5 ("[A]s

[4] Plaintiff's FOIA request includes a fee-waiver section, wherein Plaintiff states that it "qualifies as a member of the news media" and thus should not be charged fees for the processing of the records requested. Ex. A to Compl. at 4. But, even there, Plaintiff does not indicate that it intends to publicly disseminate the records sought, or otherwise speak to its intentions with the records. *See id.* Plaintiff also has failed to establish that information dissemination is its main activity. *See Allied Progress v. Consumer Fin. Prot. Bureau*, No. Civ. A. No. 17-0686 (CKK), 2017 WL 1750263, at *4 (D.D.C. May 4, 2017) ("[a]lthough courts in this Circuit and elsewhere have routinely held that media organizations and newspapers qualify under this category," the legislative history and direction by the D.C. Circuit to apply the compelling need standard narrowly, means that "other types of organizations have been held to not qualify, unless information dissemination is also their main activity."); *Am. Civil Liberties Union of N. California v. Dep't of Justice*, Civ. A. No. 04-4447, 2005 WL 588354, at *14 (N.D. Cal. Mar. 11, 2005) (requester failed to show that information dissemination was the main activity of the ACLU, even though it "engages in substantial dissemination of information").

Plaintiffs concede, they did not seek expedited processing of their FOIA request from the agencies at issue. Plaintiffs' characterization of their request in this case as an 'emergency' is accordingly placed in doubt.").

Likewise, the events on which Plaintiff bases its asserted urgency have long been known to Plaintiff. As Plaintiff's motion admits, CRT "began deploying 'election monitors' to states during the 2026 midterm primary elections, at times without notice to the public, nor without notice to election officials or the voters" and "the[se] so-called 'monitoring' activities . . . conducted during the primaries already delved into areas far beyond the scope of [its] authority." Pl.'s Mem. at 3. Similarly, Plaintiff's FOIA request cites primary elections that took place as early as June 23, 2026—over three months prior to its moving for emergency relief—as bases for its concern over "law enforcement and government presence at polling sites" and their potential "chilling or coercive effect" during the 2026 "midterm campaign cycle." Ex. A to Compl. at 1-2. And Plaintiff obviously knew the midterm elections would happen on November 3, 2026. *See* 2 U.S.C. § 7. Plaintiff cannot plausibly allege that the Court must take "emergency action" to prevent irreparable injury that Plaintiff fully admits it knew about, and which is linked to alleged activity that has been widely publicized, for at least several months.[5]

To the extent Plaintiff contends that a predicate event for the urgency underlying its emergency motion is DOJ's efforts to increase the number of election monitors for the midterms, Defendant announced those efforts on August 17, 2026, 50 days before Plaintiff served its motion for emergency relief. *See* Pl.'s Mem. at 4. Moreover, Plaintiff was aware of those planned efforts at the time it submitted its request, yet Plaintiff neither sought expedited processing on its request,

---

[5] Notably, DOJ engaged in election monitoring efforts during the 2025 general election as well. *See* Dep't of Justice, *Justice Department to Monitor Polling Sites in California, New Jersey* (Oct. 24, 2025), https://perma.cc/V9QD-XFM4.

nor did it cite the announcement as giving rise to a compelling need for the records. *See* Ex. A to Compl. at 2 (mentioning the announcement).

Similarly, to the extent Plaintiff contends that a predicate event is Acting Deputy Attorney General Trent McCotter's email soliciting volunteers to serve as election monitors, the email does not convey any new information not previously publicized. *See* Pl.'s Mem. at 5-6. Plaintiff characterizes the email as "expressly including federal prosecutors in the recruitment effort." *Id.* at 5. But the very language Plaintiff cites shows no such thing, *see* Pl.'s Mem. at 5-6 ("We are seeking attorneys and professional staff from all Divisions and U.S. Attorney's Offices (USAO) across the Department to serve as election monitors."), nor does any language in the email. *See* Pl.'s Mem. at 5 n.9 (hyperlink to the entire email).

Nor do the other events cited by Plaintiff support claims of sudden urgency concerning this FOIA matter. Plaintiff cites the FBI Director's testimony before the Senate Judiciary Community on September 15, 2026. *See* Pl.'s Mem. at 6. But the quoted testimony appears to speak to the FBI's election crimes community coordination program, which the article that Plaintiff cites makes clear is distinct from DOJ election monitoring. *See* ABC, *Kash Patel clashes with Dems about possibly sending FBI agents to polling places* (Sept. 15, 2026), https://perma.cc/ZZF8-UPR2 ("Election crimes community coordinators are typically stationed near polling places for crime prevention and immediate response in case of an incident. The Department of Justice has poll monitors at polling places nationwide, but they don't serve the same role."). And Plaintiff's request, despite its expansive breadth, does not seek records regarding that FBI program. *See* Ex. A to Compl. Likewise, the Attorney General's comment during an October 4, 2026, interview plainly provides no new information regarding the scale or scope of DOJ's election monitoring program. *See* CBS News, *Justice Department to send a record 1,000 monitors to polling places*

*in midterm elections* (Aug. 18, 2026), https://perma.cc/4R4Y-VSQC (stating that monitors will be "throughout the U.S.").

A delay in seeking preliminary injunctive relief "may support a conclusion that the plaintiff cannot satisfy the irreparable harm prong." *See Gordon*, 632 F.3d at 725. When a plaintiff is aware of impending harm and waits until the eleventh hour before requesting a preliminary injunction, it "place[s] defendants and the federal courts in a difficult position. An unexcused delay in seeking extraordinary injunctive relief may be grounds for denial because such delay implies a lack of urgency and irreparable harm." *Newdow v. Bush*, 355 F. Supp. 2d 265, 292 (D.D.C. 2005). Plaintiff knew for months about DOJ's election monitoring efforts, and knew of its precise planned scale for 50 days, but apparently did not see any irreparable harm in waiting to seek emergency relief. That strongly suggests that there is no irreparable harm here. *See Ayele v. District of Columbia*, Civ. A. No. 23-1785 (ABJ), 2023 WL 8354883, at *7 n.15 (D.D.C. Dec. 1, 2023) ("[H]ow can one square the fact that they waited until June of 2023 to file this action with the claim that they have been suffering great and irreparable harm all along?").

### C. There Is No Irreparable Injury Because the Documents Are Likely to Be Withheld or Substantially Redacted

"Moreover, further undermining a claim of irreparable harm, DOJ has provided substantial reason to think that the requested records 'are highly likely to be exempt in whole or significant part.'" *Heritage Found. v. Dep't of Justice*, Civ. A. No. 23-1854 (DLF), 2023 WL 4678763, at *4 (D.D.C. July 19, 2023) (citation omitted); *see also EPIC v. Dep't of Justice*, 15 F. Supp. 3d 32, 46 (D.D.C. 2014) (finding that the plaintiff's "contention that it will be irreparably harmed unless it receives the requested records quickly . . . is also fundamentally flawed because it ignores the well-established statutory FOIA process, which permits government agencies to withhold certain requested documents and to engage in subsequent litigation over them, without regard to the

resulting production delay"). In *Heritage Foundation*, the plaintiff's request, "[o]n its face . . . appear[e]d to call for the production predominantly of documents that would fit squarely within [Exemptions 5 and 7(A)] and other exemptions." 2023 WL 4678763, at *4. The court allowed that "none of this is to prejudge any legal issues that may arise if and when the agency ultimately asserts these exemption when producing responsive records." *Id.* Nonetheless, the court found that "[a]t least at this stage, . . . it appears to the Court that the documents most likely to vindicate the plaintiffs' asserted interests justifying injunctive relief are those that are also most likely to be exempt from disclosure under FOIA." *Id.*

So, too, here. "On its face, this request appears likely to implicate Exemptions 5, 6, 7(A), and 7(C), at a minimum." Buchko Decl. ¶ 14. Plaintiff "cannot claim to be injured—much less irreparably so—if [DOJ] withholds documents that [Plaintiff] is not entitled to access in the first instance." *EPIC*, 15 F. Supp. 3d at 46. Plaintiff's irreparable harm argument founders on this basic tenet.

### D. There Is No Irreparable Injury Because the Request Calls for the Creation of Records

Finally, "FOIA provides for disclosure of certain documents which the law requires the agency to prepare or which the agency has decided for its own reasons to create." *Nat'l Sec. Counselors v. CIA*, 969 F.3d 406, 408-09 (D.C. Cir. 2020) (quoting *NLRB v. Sears, Roebuck & Co.*, 421 U.S. at 162). "But 'FOIA imposes no duty on the agency to create records.'" *Id.* (quoting *Forsham v. Harris*, 445 U.S. 169, 186 (1980)). Rather, "it only requires disclosure of documents that already exist, not the creation of new records not otherwise in the agency's possession." *Id.* (citations omitted). By the same token, FOIA "does not require agencies to conduct research by 'answer[ing] questions disguised as a FOIA request.'" *Gelb v. Dep't of Def.*, Civ. A. No. 23-0995

(JMC), 2025 WL 49882, at *7 (D.D.C. 2025) (quoting *Nat'l Sec. Counselors v. CIA*, 898 F. Supp. 2d 233, 269 (D.D.C. 2012), *aff'd*, 969 F.3d 406 (D.C. Cir. 2020)).

Here, certain parts of Plaintiff's request appear to call on CRT to create records in response. *See, e.g.*, Ex. A to Compl. at 3, ¶ 15 ("Confirmation of whether Florida attorney David Michael Levin . . . is now . . . an employe of [DOJ] . . . ."). Other parts appear designed to require CRT to "conduct research" by "answering questions disguised as a FOIA request." *See, e.g.*, *id.* at 2, ¶ 2 ("Legal authority, if any, of the Department of Justice to deploy election monitors."). For both, Plaintiff cannot claim an injury, let alone an irreparable one; no injury may accrue where a plaintiff requests records that do not yet exist. *Cf. Phang v. Blanche*, 836 F. Supp. 3d 90, 108 (D.D.C. 2026) (in resolving motion for preliminary injunction, finding that FOIA does not require agencies to create new records that do not yet exist).

**III. <u>The Balance of the Equities and Public Interest Weigh Against Emergency Relief.</u>**

Finally, granting emergency relief would be contrary to the public interest and would harm other requesters, including nonlitigants, thus warranting denial of Plaintiff's motion. The balance of equities and the public interest elements of the injunctive relief test merge when the government is the opposing party, *Nken*, 556 U.S. at 435, and courts must "pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312-13 (1982). Courts "explore the relative harms to applicant and respondent, as well as the interests of the public at large." *Barnes v. E-Sys., Inc. Grp. Hosp. Med. & Surgical Ins. Plan*, 501 U.S. 1301, 1305 (1991). Here, the balance of equities and public interest weigh in Defendant's favor for three reasons: (1) Plaintiff would be manipulating the FOIA process to jump ahead of other requesters in line; (2) Plaintiff has requested processing on an impracticable timeline; and, relatedly, (3) Plaintiff's timeline raises a significant risk of inadvertent disclosure of records properly subject to exemption under FOIA.

*First*, courts frequently find that the balance of equities and public interest factors tilt against FOIA plaintiffs who seek to jump ahead of other requesters. *See, e.g.*, *Heritage Found. v. EPA*, Civ. A. No. 23-0748 (JEB), 2023 WL 2954418, at *6 (D.D.C. Apr. 14, 2023) ("[I]ssuing the requested injunction would just allow [Plaintiff] to jump over other FOIA requesters in line. . . . Other courts have on this basis found the balance of equities and public interest to weigh against plaintiffs in similar circumstances." (collecting cases)), *appeal dismissed*, No. 23-5086, 2023 WL 8116008 (D.C. Cir. Nov. 17, 2023). Here, for instance, CRT received is currently processing 28 FOIA litigation matters, 11 of which require either rolling productions or other court-imposed deadlines, and requests that (unlike Plaintiff's) sought expedited processing. *See* Buchko Decl. ¶ 16. Processing Plaintiff's documents at the breakneck speed demanded by Plaintiff would require stalling the processing of these, and others', requests. *See, e.g.*, *Protect Democracy Project, Inc. v. Dep't of Def.*, 263 F. Supp. 3d 293, 302-03 (D.D.C. 2017) ("[R]equiring production by a date certain, without any factual basis for doing so, might actually disrupt FOIA's expedited processing regime rather than implement it."); *EPIC*, 15 F. Supp. 3d at 47 ("[A]llowing [a plaintiff] to jump to the head of the line would upset the agency's processes and be detrimental to . . . *expedited* requesters, some of whom may have even more pressing needs."). The purpose of a preliminary injunction is to preserve the status quo, not "to give a final judgment on the merits." *Camenisch*, 451 U.S. at 395; *see also Dorfmann v. Boozer*, 414 F.2d 1168, 1173 n.13 (D.C. Cir. 1969) ("a preliminary injunction should not work to give a party essentially the full relief he seeks on the merits.").

*Second*, the harm to the agency outweighs harm to the Plaintiff because Plaintiff has requested that the records be produced at impractical speed. *See* Buchko Decl. ¶ 16. In *N.Y. Times*, 2021 WL 1614817, at *10, the agency represented that it could complete properly expedited

processing of records in roughly eight months, but the plaintiff demanded that the records be produced within twenty days. The court expressed "concern[] whether plaintiff's demand for fulfillment of the FOIA requests within 20 days is even physically possible for the agencies" and concluded that "clear burdens on defendants, when compared to the theoretical damage plaintiff claims would occur if the records are not immediately produced, weigh heavily against preliminary relief." *Id.* This is not an instance where the subject request is "relatively limited." *Protect Democracy Project, Inc. v. Dep't of Justice*, 498 F. Supp. 3d at 144 (holding that these factors weighed in plaintiffs' favor based, in part, on such consideration). Here, Plaintiff's request is broad and complex, rendering it impossible for CRT to complete its processing on the facially impractical deadline—within one week of an order from this Court—demanded by Plaintiff. Buchko Decl. ¶ 16; *see also AHA v. Price*, 867 F.3d 160, 168 (D.C. Cir. 2017) ("an equity court must examine" a claim that performance is not lawfully possible and "prior to issuing the order, find that lawful compliance is indeed possible").

*Third*, as discussed above, "requiring defendants to produce these records on an artificially abbreviated deadline 'raises a significant risk of inadvertent disclosure of records properly subject to exemption under FOIA.'" *N.Y. Times*, 2021 WL 1614817, at *11 (quoting *Daily Caller*, 152 F. Supp. 3d at 14). Here, the requested records are likely to implicate Exemptions 5, 6, 7(A), and 7(C), at a minimum. Buchko Decl. ¶ 14. Moreover, for some of these records consultation with other government agencies with equities likely will be necessary "to determine the applicability of" exemptions, *Eggleston*, 224 F. Supp. 3d at 73. Buchko Decl. ¶ 14. The deadline demanded by Plaintiff would deprive CRT of the ability to ensure the protection of information that Congress exempted from disclosure, and this therefore weighs against emergency relief. *See, e.g.*, *Protect Democracy Project, Inc. v. Dep't of Def.*, 263 F. Supp. 3d at 302-03 (denying preliminary relief,

and reasoning that "[i]mposing on Defendants [the requested deadline] would run the risk of overburdening them, and could even lead to the mistaken release of protected information."); *Glines v. Dep't of Def.*, Civ. A. No. 24-1222 (TSC), 2025 WL 1207085, at *12 (D.D.C. Apr. 25, 2025) (same); *Baker*, 2018 WL 5723146, at *5 (same); *Daily Caller*, 152 F. Supp. 3d at 14 (same).

Plaintiff's arguments to the contrary, *see* Pl.'s Mem. at 9-10, are unavailing. Plaintiff contends that these elements weigh in its favor because the "right to vote free from intimidation and the right to ensure that elections are carried out free from federal interference on the part of [] Defendant, far outweigh the administrative resources that might have to be temporarily redirected to fulfill the agency's duties under [FOIA]." *Id.* at 10. But, as explained above, *see supra* § II.A., Plaintiff completely fails to connect these serious, alleged harms to the relief it requests. Plaintiff also remarks that "[t]he sunshine of public transparency is always in the public's interest." Pl.'s Mem. at 10. But every FOIA request seeks precisely that: to "ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978); *see also Daily Caller*, 152 F. Supp. 3d at 14 ("Even taking into account both the broad public interest in disclosure and the plaintiff's unique interest in obtaining a prompt response to its particular requests, however, the plaintiff's effort to jump to the head of the FOIA processing line would work a significant burden on both the agency and numerous interested parties.").

Another FOIA case from the 2020 election cycle serves as an instructive contrast to Plaintiff's case here. In *Protect Democracy Project, Inc. v. Dep't of Justice*, the plaintiff submitted a FOIA request to DOJ seeking information "regarding participation in any DOJ voting or voting fraud task force" in advance of the 2020 general election. 498 F. Supp. 3d at 235-36. The plaintiff's request was "relatively limited"—"it only s[ought] 'communications' regarding a

narrowed subject matter and time period" and was expressly confined to "non-exempt records." *Id.* at 144, 134. Further, the plaintiff submitted the request nearly four months before the general election, and sought expedited processing in its request, which DOJ denied. *Id.* at 135-36. Finding that the plaintiff had shown a likelihood of success on the merits of its challenge of DOJ's denial of its expedited-processing request—but not its challenge of DOJ's failure to make a determination on its request within 20 working days—the court granted the plaintiff preliminary relief, in part. *Id.* at 141, 145. But "critically, despite all this, Judge Sullivan *denied* [the plaintiff's] request that [the records sought] 'be processed prior to Election Day.'" *Heritage Found.,* 2024 WL 4607501, at *11 (emphasis in original; quoting *Protect Democracy Project, Inc.*, 498 F. Supp. 3d at 142)).

Here, Plaintiff did none of those things. Plaintiff's request is "broad and complex." Buchko Decl. ¶ 14. Far from beings confined to non-exempt records, the request, on its face, seeks records that appear likely to implicate multiple FOIA exemptions—and, further, to require consultation with other agencies and demand the creation of records that do not yet exist. *Id.* Moreover, Plaintiff did not seek expedited processing in its request, *id.* ¶ 9, and waited until just a few weeks before the election to file this lawsuit and seek emergency judicial relief. In contrast to the plaintiff in *Protect Democracy Project*, Plaintiff's request and its conduct undermine its claim for emergency relief, and warrant denial of the motion in full.

For all these reasons, the balance of the equities weighs decisively against granting Plaintiff's motion.

## IV. <u>The Court Should Require Plaintiff to Post Security</u>

For the reasons set forth above, the Court should deny Plaintiff's motion. However, if the Court enters injunctive relief, the Court should issue a stay pending appeal and order Plaintiff to post security. *See Hilton v. Braunskill*, 481 U.S. 770, 776 (1987) (setting forth the factors "regulating the issuance of a stay.").

"The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). The D.C. Circuit recently clarified that "injunction bonds are generally required." *NTEU v. Trump*, No. 25-5157, 2025 WL 1441563, at *3 n.4 (D.C. Cir. May 16, 2025), *reh'g en banc denied* (July 16, 2025). A bond is appropriate here given that the requested preliminary relief would potentially require Defendant to spend significant time and resources to expeditiously process Plaintiff's FOIA request.

**CONCLUSION**

For the reasons set forth above, the Court should deny NAACP's motion for emergency relief and permit the parties to file a joint status report in sixty days.

Dated: October 13, 2026

Respectfully submitted,

JEANINE FERRIS PIRRO
United States Attorney

PETER C. PFAFFENROTH
Chief, Civil Division

By: /s/ *William Thanhauser*
WILLIAM THANHAUSER, D.C. Bar #1737034
DIMITAR P. GEORGIEV
Assistant United States Attorneys
601 D Street, NW
Washington, DC 20530
(202) 252-7706

*Attorneys for the United States of America*