**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE,<br>4805 Mt. Hope Drive<br>Baltimore, MD 20215<br><br>*Plaintiff,*<br><br>vs.<br><br>HARMEET DHILLON,<br>In Her Official Capacity as<br>Assistant Attorney General of the<br>CIVIL RIGHTS DIVISION<br>U.S. DEPARTMENT OF JUSTICE,<br>950 Pennsylvania Ave. NW<br>Washington, DC 20530, and<br><br>THE CIVIL RIGHTS DIVISION OF THE<br>US DEPARTMENT OF JUSTICE<br><br>*Defendants* | ) | **Civil Action No. 26-3461** |

**AMENDED COMPLAINT**

1. The Department of Justice's Civil Rights Division has deployed "election monitors" during the 2026 midterm campaign cycle to polling sites in several jurisdictions across the country. In some instances, it has done so without notice and without having received consent from jurisdictions. The Justice Department more recently, announced plans to deploy over 1,000 election monitors during the upcoming November 3, 2026 general election.[1] This unprecedented deployment of federal officials stands to jeopardize the

[1] Jenkins, Jimmy and Strohm, Chris. "DOJ Plans to Deploy 1,000 Monitors to Watch Midterm Elections." Bloomberg, https://www.bloomberg.com/news/articles/2026-08-17/doj-plans-to-deploy-1-000-monitors-to-watch-midterm-elections (Aug 17, 2026)

election and interfere with the right of voters to participate in the election free from intimidation.

2. Courts have recognized that unnecessary law enforcement and government presence at polling sites can cause fear, create confusion, impose burdens on election officials, and have a chilling or coercive effect on the electorate.[2] Indeed, many states have outright bans on law enforcement entering polling places without serving a specific law enforcement need.[3]
3. The National Association for the Advancement of Colored People (NAACP) is the nation's oldest and largest civil rights organization and one of the pillars of its mission is to promote voting, advocate for the equal right to vote, and ensure that voters are able to exercise their fundamental right to vote without fear or intimidation.
4. Given both the intense focus of resources of the Department of Justice (DOJ), the ambiguity of activities stemming from these actions, and a growing concern over federal overreach and interference in the 2026 midterm general election, the NAACP sought records from the DOJ's Civil Rights Division (CRT) through the Freedom of Information Act (FOIA) to shed light on the Justice Department's activity to date and future plans related to placing "election monitors" at polling sites in various jurisdictions across the country. The full request is submitted as Exhibit A attached at the end of this complaint.
5. The NAACP submitted their FOIA request on September 1, 2026 to the FOIA Branch of the Civil Rights Division.
6. Following the failure of Defendant to at minimum gather and review the records from the NAACP's request and determine the scope of the records to be withheld and released

[2] See e.g. *Burson v. Freeman*, 504 U.S. 191 at 207 (1992).
[3] See e.g. TN Code § 2-7-103 (2025); Cal. Elec. Code § 18544; Ind. Code § 3-6-6-36.

within the statutorily mandated 20-day response period under 5 U.S.C. § 552(a)(6)(A)(i), the NAACP is now appropriately seeking judicial intervention in the FOIA request process under 5 U.S.C. § 552(a)(6)(C)(i) and, specifically, the issuance of a Writ of Mandamus under 28 U.S.C. § 1361.

7. With the 2026 midterm general election 31 days away, there is an urgent need for the Defendant to produce and release the records and information that the Plaintiff requested.

8. The Plaintiffs are, therefore, respectfully requesting this Court to issue an emergency order granting this Petition for a Writ of Mandamus to compel the Defendants to gather the records *and* produce them in response to the pending FOIA request at issue in this Complaint.

## VENUE AND JURISDICTION

9. The Court has jurisdiction over this matter under 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. §§ 1331, 2201, and 2202.

10. Venue is proper in this district pursuant to 5 U.S.C. § 552(a)(4)(B), which explicitly names the District Court for the District of Columbia as proper venue, and 28 U.S.C. §1391(e) because the actions of Defendant are alleged to have occurred in the District of Columbia.

11. Because Defendant has failed to comply with the applicable time-limit provisions of FOIA, Plaintiffs are deemed to have exhausted their administrative remedies pursuant to 5 U.S.C. § 552(a)(6)(C)(i) and are now entitled to an order requiring Defendant to process their FOIA request.

12. This Court further has jurisdiction over "any action in the nature of mandamus to compel an officer or employee of the United States or any Agency thereof to perform a

duty owed to the plaintiff." 28 U.S.C. § 1361.

## PARTIES

13. Plaintiff is the National Association for the Advancement of Colored People (NAACP).

14. The NAACP is the oldest and largest civil rights organization in the country. Its mission is to achieve equity, political rights, and social inclusion by advancing policies and practices that expand human and civil rights, eliminate discrimination, and accelerate the well-being, education, and economic security of Black people and all persons of color.

15. The NAACP has historically opposed voter suppression efforts through outright threats and ballot denial, and efforts to make it more difficult to vote through actions of both government and private action.

16. Defendant Harmeet Dhillon is the Assistant Attorney General for the Civil Rights Division of the Department of Justice and she is sued in her official capacity.

17. Defendant is the United States Department of Justice's (DOJ) Civil Rights Division (CRT) and is an agency within the meaning of 5 U.S.C. § 552(f)(1), has possession and control of the records requested and is responsible for fulfilling Plaintiff's FOIA request.

## LEGAL FRAMEWORK

18. FOIA provides that "each agency, upon request for records which (i) reasonably describes such records and (ii) is made in accordance with published rules…shall make the records promptly available to any person." 5 U.S.C. § 552(a)(3)(A).

19. Upon receipt of a FOIA request, an agency must make a *determination* whether to comply with it and to notify the requester of that *determination* within twenty days of receipt of a request, excluding Saturdays, Sundays, and legal public holidays. 5 U.S.C. § 552(a)(6)(A)(i). (emphasis added).

20. If an agency fails to make a determination within the prescribed time frame, the requesters are deemed to have exhausted their administrative remedies. 5 U.S.C. § 552(a)(6)(C)(i).

21. When granting emergency relief, a plaintiff must establish that they are likely to succeed on the merits of the case; that they are likely to suffer irreparable harm in the absence of preliminary relief; that the balance of equities tips in their favor; and that an injunction is in the public interest. *Winter v. Natural Resources Defense Council, Inc*., 555 U.S. 7, at 20 (2008).

22. A Writ of Mandamus seeking "to compel an officer or employee of the United States or any agency to perform a duty owed to the plaintiff" is rightfully filed in a district court of the United States. 28 U.S.C. § 1361.

## STATEMENT OF FACTS

23. The Department of Justice has deployed "poll observers," in part through its Office of Personnel Management, as part of its oversite duties under the Voting Rights Act of 1965 in elections over the last 60 years.[4] The DOJ sends poll observers to jurisdictions under a court order based on Section 3(a) of the Voting Rights Act. As of 2026, there are four (4) political subdivisions in two (2) states eligible for poll observers under the VRA.[5]

24. In recent years, the Department has deployed "election monitors" to a carefully proscribed list of jurisdictions on the day of elections, and did so only after providing proper notice and obtaining consent from state voting officials.[6]

---

[4] Civil Rights Division of the Department of Justice. About Federal Observers and Election Monitoring, https://www.justice.gov/crt/about-federal-observers-and-election-monitoring. (Last accessed September 24, 2026).
[5] *Id.*
[6] Department of Justice's Office of Public Affairs. Justice Department to Monitor Polls in 28 States on Election Day, https://www.justice.gov/archives/opa/pr/justice-department-monitor-polls-28-states-election-day. (Last accessed Sept. 24, 2026).

25. This election year, however, the Department's "election monitor" program has shifted its focus away from ensuring access for voters and promoting compliance with voting rights laws that fall within the purview of the Civil Rights Division's enforcement authority to instead searching for evidence related to unfounded claims of widespread voter fraud. The DOJ's announcements about 2026 poll monitoring efforts have highlighted "ballot security," even though the Civil Rights Division has no authority over such statutes, and in the absence of any evidence of election fraud.[7]

26. The actions of the current Civil Rights Division's monitors have raised widespread concerns from state officials and voters. For example, Wyoming Governor Mark Gordon described the Justice Department's monitors' behavior during his state's primary elections as "aggressive" and "irregular," and that the monitors' "behavior seemed to exceed what the authority that Congress had given them was."[8]

27. There have been reported issues, too, of DOJ not providing notice and obtaining consent from state and local officials.[9]

28. One DOJ "election monitor" who was stationed in Minnesota, David Michael Levin, reportedly pleaded guilty in 2016 to illegally hacking a government election website in Florida as a part of a scheme to promote baseless claims regarding the "integrity of elections."[10]

---

[7] U.S. Dep't of Justice, Justice Department to Conduct Election Monitoring in South Carolina Primary Election (Aug. 25, 2026), https://www.justice.gov/opa/pr/justice-department-conduct-election-monitoring-south-carolina-primary-election

[8] Adam Edelman, *Wyoming's Republican governor raises concerns over aggressive DOJ election monitors*, NBC News (Aug. 27, 2026), https://www.nbcnews.com/politics/2026-election/wyoming-republican-governor-concerns-aggressive-doj-election-monitors-rcna594730

[9] *Id.*

[10] Rivas, Yunior, *Exclusive: Trump DOJ appears to have hired lawyer convicted of hacking election sites to check 'integrity'*, Democracy Docket (August 21, 2026), https://www.democracydocket.com/news-alerts/trump-doj-

29. On August 17, 2026, Assistant Attorney General Harmeet Dhillon announced that the Department of Justice will send 1,000 monitors to polling sites during the November 3, 2026 midterm general election.[11]

30. On September 1, 2026, Plaintiff submitted a FOIA request to the Civil Rights Division's FOIA Branch requesting the following records[12]:

    a. Legal authority, if any, of the Department of Justice to deploy "election monitors";

    b. Records reflecting any final legal advice and analysis (including both formal legal analyses and memoranda, as well as informal electronic communications) regarding the deployment of election monitors at polling places;

    c. All third-party complaints, if any, received by the Department of Justice that led to the deployment of election monitors in any of the locations from the 2026 midterm primary elections and planned as part of the monitoring for the general 2026 midterm elections;

    d. All complaints, if any, from members of the public received by the Department of Justice in response to or related to the "election monitors" during the 2026 midterm election cycle to date;

    e. Any and all complaints from public officials received by the Department of Justice in response to or related to the election monitors during the 2026 midterm election cycle to date;

---

appears-to-have-hired-lawyer-convicted-of-hacking-election-sites/.

[11] Lynch, Sarah. *Justice Department to Send a Record 1,000 Monitors to Polling Places in Midterm Elections.* CBS News. Aug. 18, 2026. https://www.cbsnews.com/news/justice-department-election-monitors-midterms/

[12] See Exhibit A.

f. Any and all complaints from (i) the Governor of Wyoming or any other Wyoming public official, (ii) staff member of a Wyoming public official, or (iii) any Wyoming government employee received by the Department of Justice in response to or related to the election monitors during the 2026 midterm election cycle to date;

g. Comprehensive list of locations of deployment, including but not limited to (i) all locations that election monitors have been deployed in 2026, and (ii) all locations where election monitors are to be deployed for the November 3, 2026 midterm general election;

h. Information used to internally identify the jurisdictions where election monitors are to be deployed in the midterm general election;

i. Documents used to provide notice to jurisdictions of the monitor activities conducted by the Department of Justice with dates of the notice documents, and time/date logs of any telephonic or video conference providing notice to jurisdictions of the monitor activities conducted by the Department of Justice;

j. Training materials for election monitors;

k. Whether monitors are trained to follow state laws regarding the deployment of third party election monitors;

l. Qualifications for serving as an election monitor;

m. Restrictions, if any, on the personnel deployed to serve as election monitors;

n. List of names, employment, department, and job titles of all election monitors deployed in the above-listed primary elections, all election monitors deployed in

2026 to jurisdictions not listed above, and all election monitors who will be deployed during the midterm general election;

o. Confirmation of whether Florida attorney David Michael Levin (DOB 04/20/19**) (i) is now, has been in the last year, or will be an employee of the Department of Justice, (ii) was he involved in monitoring and/or present in the State of Minnesota or any other jurisdiction during the 2026 midterm primary election, (iii) and if an employee of the Department of Justice, what is his job title including the division and who is his supervisor;

p. Any written consent the Department received from (i) all jurisdictions where election monitors have been deployed in the above-listed primary elections, (ii) all jurisdictions where election monitors have been deployed in 2026 to jurisdictions not listed above, and (iii) all jurisdictions where election monitors will be deployed in the midterm general elections;

q. Whether personnel from the Federal Bureau of Investigation (F.B.I.), Department of Homeland Security (D.H.S.), U.S. Immigration and Customs Enforcement (I.C.E.), or any other federal law enforcement agency have been deployed to serve as an election monitor to jurisdictions where election monitors have been deployed in the above-listed primary elections, or as election monitors deployed in 2026 midterm election in jurisdictions not listed above, or who will be deployed in the midterm general elections on November 3, 2026;

r. Whether personnel from any law enforcement agency will be deployed as monitors for the November 3, 2026 midterm election cycle;

s. Copies of any and all forms, documents, or reports completed during all election monitoring efforts in the above-listed primaries and in any jurisdictions not listed above; and

t. Copies of any and all forms to be completed during all election monitoring efforts in the midterm general elections.

31. On September 21, 2026, Defendant sent an email to Plaintiff "acknowledge[ing] receipt of the…FOIA request" and notifying Plaintiff that Defendant "may encounter delays in processing [Plaintiff's] request."[13]

**PLAINTIFF'S CLAIM**

**Failure to Make a Determination on the Records Requested in Violation of FOIA**

32. The law on making a "determination" for the purposes of an agency's response to a FOIA request is clear. "[I]n order to make a 'determination' and thereby trigger the administrative exhaustion requirement, the agency must at least: (i) gather and review the documents; (ii) determine and communicate the scope of the documents it intends to produce and withhold, and the reasons for withholding any documents; and (iii) inform the requester that it can appeal whatever portion of the "determination" is adverse." *Citizens for Responsibility and Ethics in Washington v. FCC,* DC Cir. 711 F.3d 180, 188 (2013).

33. The timeline of 20 business days is mandated by FOIA and if the agency does not adhere to FOIA's explicit timelines, the requesting party is no longer able to pursue administrative appeals and thus the agency cannot wrap itself in the cloak of the administrative exhaustion requirement to keep cases from getting into court. *Id* at 189.

[13] Full copy of email is attached to this Complaint as Exhibit B.

34. To be sure, the requirement is not to produce the documents within the 20-day period. The agency must, however, process the request by locating the records and making a determination of whether it intends to produce or withhold the records. "This scheme provides an incentive for agencies to move quickly but recognizes that agencies may not always be able to adhere to the timelines that trigger the exhaustion requirement." *Id.* At 189.

35. In this case, the agency utterly failed to accomplish this requirement. The September 21, 2026 email reflects the Civil Rights Division's failure to "gather and review the documents," nor did it "determine and communicate the scope of the documents it intends to produce and withhold."

36. As a result of the Defendant agency's failure to follow the timeline, the administrative exhaustion requirement no longer applies and this Court is able to exercise its jurisdiction to handle the matter.

37. This FOIA request deals with potential threats to the 2026 midterm elections and the right of citizens to exercise their fundamental right to vote, and thus the substance of the material sought and the interest of the public is at its peak.

38. This FOIA request, moreover, deals with an extremely sensitive, urgent, and concrete timeline: the 2026 midterm general election is 31 days away from the time of the filing of this complaint, and many states have begun or will soon begin Early Voting.

39. Should the Court not take emergency action, the Defendant agency will effectively run out the clock on this request to the detriment.

## **EMERGENCY RELIEF**

40. Emergency Relief is necessary to effectuate the purpose of the underlying FOIA statute given the magnitude of the interest and the urgency of the timeline. The balance of the four factors weighed by courts when determining whether to grant emergency relief clearly rests in favor of granting Plaintiff's request.

*Likelihood to Succeed on Merits*

41. The text of the FOIA statute is clear and the D.C. Circuit has squarely addressed the issue of a defendant agency's failure to make a determination within the 20-day timeframe prescribed by FOIA. See *Citizens for Responsibility and Ethics in Washington v. FCC,* DC Cir. 711 F.3d 180, 188-90 (2013).

42. As in *Citizens v. FCC*, the Defendant here did not provide in their response to Plaintiff the required determination of what documents it intends to produce or withhold.

43. As a result of this inaction on the part of Defendants, "the 'penalty' is that the agency cannot rely on the administrative exhaustion requirement to keep cases from getting into court." *Id*, at 189-190.

44. Judicial intervention in this FOIA request is clearly proper, which is the substance of this complaint, and therefore the Plaintiff will succeed on the merits of the case.

*Plaintiff is Likely to Suffer Irreparable Harm*

45. The harm to be suffered by the Plaintiff is clear: the information sought in the FOIA request involves the fundamental right to vote, and potential interference and suppression of that right by the Defendant's oft toted and eerily vague and undisclosed plans to completely shift its historic Election Day work; in Defendant's own words, they will

conduct the largest deployment of DOJ lawyers and personnel in the history of the United States.[14]

46. Voting is the cornerstone of a citizen's rights in a democracy because it is the wellspring from which our institutions derive power. The right to vote is chief among the bundle of rights that define American citizenship. Over a half-century ago, the Supreme Court cemented that principle, writing that "the right to exercise the franchise in a free and unimpaired manner is preservative of other basic civil and political rights." *Reynolds v. Sims*, 377 U.S. 533, at 562 (1964).

47. The Supreme Court further recognized that the right to vote can be suppressed by even the "appearance of coercion in the electoral process" when enforcement arms of the government are in the vicinity of polling locations. *Burson v. Freeman*, 504 U.S. 191 at 207 (1992).

48. Finally, the nature of this FOIA request being tied to the Election Day, which is 31 days from the date of this filing, makes it clear that if the Court does not issue the emergency relief sought by Plaintiffs, then the Defendant will effectively and actually be permitted to continue to violate the terms of FOIA. This, too, is a form of irreparable harm.

49. The Plaintiff, therefore, is likely to suffer irreparable harm both with regards to the substantive issue of Defendant's plans to dispatch its employees in a manner that has the outcome of suppressing a fundamental right, *and* the complete lack of redress and mootness of the FOIA request following November 3, 2026.

[14] Knutson, Jacob. DOJ Close to Recruiting 1,000 Election Monitors for Midterms, Harmeet Dhillon Says. Democracy Docket. Sept. 22, 2026. https://www.democracydocket.com/news-alerts/doj-close-to-recruiting-1000-election-monitors-for-midterms-harmeet-dhillon-says/

50. The Defendant would not be injured by the Court's issuance of the emergency Writ of Mandamus because the agency created this situation through its own inaction.

51. A Defendant cannot claim injury from its own dereliction of a previous duty.

52. At most, the Defendant can allege that the expedited production of documents order by this Court would consume agency resources. While that may be true, the Defendant has demonstrated through its ability to recruit a 1,000 DOJ employees for the poll monitoring that it has expanded capacity.

*The Balance of Equities Weigh in Favor of Plaintiff*

53. In essence, the scales consist of a time-bomb of irreparable harm to the fundamental right of voting free from intimidation or federal interference on the Plaintiff's side, and administrative resources that might have to be temporarily redirected to fulfil the agency's duties under the FOIA statute.

54. To be clear, the Defendant *is* required by statute to comply with FOIA. The Defendant *is not* required by any statute to overextend itself by launching an unprecedentedly large and undefined deployment of federal "election monitors" to jurisdictions across the country to the potential peril of voters and election officials alike.

*The Emergency Relief Sought is in the Public's Interest*

55. The public will benefit substantially from the information requested by Plaintiff.

56. The rhetoric of the Defendant and the current administration regarding their plans for Election Day have produced anxiety and fear.

57. The sunshine of public transparency is always in the public's interest when compared to a government agency being permitted to carry out massive secret plans, especially when dealing with the public's fundamental right to vote.

**PRAYER FOR RELIEF**

58. WHEREFORE, Plaintiff respectfully requests this Court:

a. Order Defendants to preserve all records, in whatever form they exist, potentially responsive to Plaintiff's request *prior* to and *during* the processing of its request;

b. Order Defendants to grant Plaintiff's request for fee waivers;

c. Grant the Plaintiff's request for emergency relief;

d. Issue a Writ of Mandamus ordering the Defendant Dhillon to immediately identify, produce, and release the records requested by the Plaintiff;

e. Retain jurisdiction over this action to ensure that no agency records are wrongfully withheld; and

f. Grant any other such relief that this Court may deem just and proper.

Dated: October 15, 2026

Respectfully Submitted,
*/s/ Max L. Meyers*
Max L. Meyers*
Anthony Ashton (Bar No. MD25220)
Kristen M. Clarke*
NATIONAL ASSOCIATION FOR THE
ADVANCEMENT OF COLORED PEOPLE
480 Mt. Hope Drive
Baltimore, MD 20215
(480) 580-5777
aashton@naacpnet.org
kclarke@naacpnet.org
mmeyers@naacpnet.org

*Admitted Pro Hac Vice