**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE,<br>4805 Mt. Hope Drive<br>Baltimore, MD 20215<br><br>*Plaintiff*,<br><br>vs.<br><br>HARMEET DHILLON,<br>In Her Official Capacity as<br>Assistant Attorney General of the<br>CIVIL RIGHTS DIVISION<br>U.S. DEPARTMENT OF JUSTICE,<br>950 Pennsylvania Ave. NW<br>Washington, DC 20530;<br><br>CIVIL RIGHTS DIVISION<br>US DEPARTMENT OF JUSTICE<br><br>*Defendants* | ) | **Civil Action No. 26-3461** |

**PLAINTIFF'S REPLY IN SUPPORT**
**OF ITS MOTION FOR EMERGENCY RELIEF**

# TABLE OF CONTENTS


Table of Contents……………………………………………………………………………..i

Table of Authorities…………………………………………………………………………ii

Introduction……………………………………………………………………………..1

Background……………………………………………………………………………..3

Argument………………………………………………………………………………4

I. The Court has Jurisdiction to Grant the Requested Relief……………………………6

II. Emergency Relief in the Form of a Mandatory Preliminary Injunction is Appropriate and Necessary……………………………………………………………………6

A. NAACP is clearly entitled to relief on the merits…………………………………8

B. NAACP will suffer irreparable injury……………………………………………12

C. The Mandatory Preliminary Injunction Would Not Harm Other Interested Parties……………………………………………….…………………14

III. NAACP's Request for Accelerated Processing is Appropriate………………………15

A. Requesting Expedited Processing to the Agency is Not a Requirement for the Court to Grant Emergency Relief in FOIA Litigation…………………………...16

B. The Court Has Latitude to Consider Factual Developments Outside the Administrative Record……………………………………………………...18

C. The Underlying FOIA Complaint Meets the Established Standard for Expedited Processing……………………………………………………………………..20

D. The Court Can Grant Accelerated Relief in the Alternative Through the Issuance of a Writ of Mandamus……………………………………………………..24

Conclusion…………………………………………………………………….……25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Al-Fayed v. C.I.A.*,
254 F.3d 300 (D.C. Cir. 2001) …..……………………………………………...……......7,22

*Allied Chemical Corp. v. Daiflon, Inc.*,
449 U.S. 33 (1980) …………………………………………………………………………24

*American Oversight v. U.S. Department of State*,
414 F. Supp. 3d 182 (D.D.C. 2019) …………………………………………....…….2,4

*Brennan Center for Justice at NYU School of Law v. Department of Commerce*,
498 F. Supp. 3d 87 (D.D.C. 2020) …………………………………………………………13

*Burson v. Freeman*,
504 U.S. 191 (1992) ………………………………………………………………………..23

*Chaplaincy of Full Gospel Churches v. England*,
454 F.3d 290 (D.C. Cir. 2006) ……………………………………………………………..12

*Citizens for Responsibility and Ethics in Washington v. FCC*,
711 F.3d 180 (D.C. Cir. 2013) …………………………………………………………..…6

*CityFed Financial Corp. v. Office of Thrift Supervision*,
58 F.3d 738 (D.C. Cir. 1995) ……………………………………………………………..7

*Center for Public Integrity v. U.S. Department of Defense*,
411 F. Supp. 3d 5 (D.D.C. 2019) …………………………………………………………8

*Cuomo v. United States Nuclear Regulatory Commission*,
772 F.2d 972 (D.C. Cir. 1985) ……………………………………………………………7

*Daily Caller v. U.S. Department of State*,
152 F. Supp. 3d 1 (D.D.C. 2015) ……………………………………………………....5,7,12

*Democracy Forward Foundation v. Office of Management and Budget*,
780 F. Supp. 3d 61 (D.D.C. 2025) ………………………………………………5,7,8,13,15,21,23

*Electronic Privacy Information Center v. Department of Justice*,
15 F. Supp. 3d 32 (D.D.C. 2014) ……………………………………………………….5,8

*ExxonMobil Corp. v. Department of Commerce*,
828 F. Supp. 2d 97 (D.D.C. 2011) ....................25

*Forsham v. Harris*,
445 U.S. 169 (1980) ....................10

*Gelb v. Department of Defense*,
No. 23-0995 (JMC), 2025 WL 49882 (D.D.C. 2025) ....................10

*Harrington v. Food and Drug Administration*,
581 F. Supp. 3d 145 (D.D.C. 2022) ....................17

*Howell v. Department of Homeland Security*,
No. 24-2791 (JMC), 2024 WL 4582978 (D.D.C. Oct. 25, 2024) ....................17

*Long v. Department of Homeland Security*,
436 F. Supp. 2d 38 (D.D.C. 2006) ....................7

*Machado Amadis v. U.S. Department of State*,
971 F.3d 364 (D.C. Cir. 2020) ....................15

*Morales v. Secretary, U.S. Department of State*,
220 F. Supp. 3d 1 (D.D.C. 2016) ....................18

*National Security Counselors v. CIA*,
898 F. Supp. 2d 233 (D.D.C. 2012) ....................10,25

*New York Times Co. v. Defense Health Agency*,
No. 21-cv-566, 2021 WL 1614817 (D.D.C. Apr. 25, 2021) ....................23

*Oglesby v. Department of the Army*,
920 F.2d 57 (D.C. Cir. 1990) ....................6

*Payne Enterprises, Inc. v. United States*,
837 F.2d 486 (D.C. Cir. 1988) ....................16

*Power v. Barnhart*,
292 F.3d 781 (D.C. Cir. 2002) ....................24

*Protect Democracy Project, Inc. v. U.S. Department of Defense*,
263 F. Supp. 3d 293 (D.D.C. 2017) ....................19

*Renegotiation Board v. Bannercraft Clothing Co., Inc.*,
415 U.S. 1 (1974) ....................16

*Reynolds v. Sims*,
377 U.S. 533 (1964) ……………………………………………………………………..23

*Washington Metropolitan Area Transit Commission v. Holiday Tours, Inc.*,
559 F.2d 841 (D.C. Cir. 1977) …………………………………………………………………7

*Washington Post v. Department of Homeland Security*,
459 F. Supp. 2d 61 (D.D.C. 2006) ……………………………………………………………..6

*Wisconsin Gas Co. v. FERC*,
758 F.2d 669 (D.C. Cir. 1985) ……………………………………………………………..12

**Statutes**

5 U.S.C. § 552 . ……………………………………………………………………………...2
5 U.S.C. § 552(a)(4)(B) . ……………………………………………………………..4,6,8
5 U.S.C. § 552(a)(6)(E)(i)……..……………………………………………………....18,21
5 U.S.C. § 552(a)(6)(E)(v)……..………………………………………………….........22
5 U.S.C. § 552(a)(8)(A)(i) . …………………………………………………………………9

**Other Authorities**

H.R. Rep. No. 93-876 (1974) . ………………………………………………………………6

## INTRODUCTION

With less than three weeks before the November 3, 2026 midterm general election, the Civil Rights Division of the U.S. Department of Justice is poised to launch an unprecedented deployment of federal law enforcement personnel to *every state* in the nation on Election Day.[1] In contrast to longstanding policies of the Civil Rights Division that require any poll monitoring effort to be conducted in a limited and carefully tailored manner, with the goal of merely observing a jurisdiction's compliance with a narrow set of federal civil rights laws, Defendant has now redesigned and expanded the poll monitoring effort. Instead, the Civil Rights Division has announced that it plans to conduct massive and indiscriminate deployment of federal personnel, including criminal prosecutors, FBI agents and other law enforcement personnel, to polling sites. Defendant Dhillon even stated that the Civil Rights Division would use DOJ monitors to ensure that no citizen's vote would be canceled out by someone who "should not be voting."[2] Transparency regarding the Justice Department's efforts is necessary.

The Civil Rights Division has, in a limited set of circumstances, sent poll monitors to a variety of jurisdictions on Election Day "to protect the right of all citizens to access the ballot," and did so through notice and planning with local election officials. These poll monitors focused on viewing election activity in a hands-off manner and "*gather[ing] information*" on local compliance with federal voting rights statutes (ie. Sections 203, 208, 14(b) of the Voting Rights Act; Americans with Disabilities Act). Of significance, alleged election fraud and other criminal

---

[1] Frazao, Kristine, "*Justice Department to Deploy Election Monitors Nationwide as Critics Warn of Intimidation*," CBS Austion (October 5, 2026). https://cbsaustin.com/news/nation-world/justice-department-to-deploy-election-monitors-nationwide-as-critics-warn-of-intimidation-ice-agents-trump-administration-national-guard?teaserSource=trending.
[2] Video posted by Harmeet Dhillon (@AAGDhillon), X, "We @TheJusticeDept are proud to safeguard every American's right to vote — and we will continue routine, nonpartisan election monitoring that's been standard under both Republican & Democrat administrations for decades. Stay tuned for more!" (July 7, 2026), https://x.com/AAGDhillon/status/2074616926941114411.

issues related to voting were not part of the Civil Rights Division's jurisdictional authority and certainly not part of the Division's poll monitoring activities. Any such federal criminal matter would be handled separately by, for example, prosecutors at the U.S. Attorneys' Offices and the Department of Justice's Criminal Division.

This spring, the Civil Rights Division began monitoring primary elections for the purpose of addressing concerns that fall beyond the scope of the Division's authority and mission. The Division has indicated that monitors deployed during the primary were focused on concerns such as purported vote fraud and "ballot security." This dramatic departure from the Division's historic focus and stark abandonment from Departmental policy was done without explanation, has left the public in the dark. Moreover, the Department has deployed monitors without issuing press releases in advance, leaving officials in states like Wyoming, and voters, confused and concerned about the activities of the federal government.

The public has a right to know the decisions and actions of government officials and their agencies. Congress created the Freedom of Information Act (FOIA) 5 U.S.C. § 552 for this express purpose; when the federal government operates under the cover of night, the American people can bring those actions into the light of day. Recognizing that a government official or agency may not respond to such a request, Congress likewise vested authority in the Judicial Branch to exercise its equitable powers to effectuate the purpose of FOIA. Courts in the District of Columbia have exercised this extraordinary remedy cautiously and have issued preliminary injunctions "where FOIA requesters have sought records to inform an imminent public debate on a matter of national concern." *American Oversight v. U.S. Department of State*, 414 F. Supp. 3d 182,185 n.5 (D.D.C. 2019). The current case presents precisely the set of circumstances that warrant the Court to issue such an extraordinary remedy.

Americans deserve an electoral process that is fair and transparent. The information sought in this action will provide the American public with basic details regarding the operations of the Defendant's dramatically restructured "election monitoring" efforts. This will include invaluable information regarding the changes to the monitoring system, the scope and focus, its interactions with state and local government officials, complaints it has received thus far, and how widespread its mission will be for the duration of the 2026 general election.

Public reporting has already brought to light the threat posed by Defendant's actions such as deployment of an FBI agent, deployment of federal criminal prosecutors, deployment of at least one DOJ attorney convicted of election crimes, and deployment with little to no notice provided to state and local government officials and voters regarding their deployment. Reporting also suggests that these monitors are being deployed for purposes that extend far above and beyond the limited jurisdiction of the Civil Rights Division and well past the traditional purposes that have led to monitoring efforts in the past. Simply put, the information sought will provide the American people—both voters and local election officials alike—with the details of the Defendant's planned actions in order to ensure that voters are able to exercise their fundamental right to vote this Election Day.

## BACKGROUND

The National Association for the Advancement of Colored People (Plaintiff) submitted a request on September 1, 2026 to the Civil Rights Division under FOIA for information and records related to the "election monitoring" activities of the Civil Rights Division.[3] On September 21, 2026, the Civil Rights Division sent an email acknowledging receipt of the FOIA request, but without any of the required components to constitute a fulfilment of their statutory

[3] *See* Complaint [1] Exhibit A.

obligations.[4] Crucially, the email response did not state that the Civil Rights Division had made any determination on the documents it intended to produce or withhold, and there was no indication that it had even begun to gather and review the records at issue. Indeed, Defendant concedes the point that it failed to make the required determination within 20 working days. Op. Brief [17] at 9.

In accordance with the FOIA statute and as expounded by precedent in the D.C. Circuit, the NAACP rightly filed its complaint on October 2, 2026, asking the Court to compel the Defendant to comply with the statute. "FOIA specifically permits courts to 'enjoin [an] agency from withholding agency records and to order the production of any agency records improperly withheld.'" *American Oversight v. U.S. Department of State*, 414 F. Supp. 3d 182, 184 (D.D.C. 2019) (quoting 5 U.S.C. § 552(a)(4)(B)). On October 4, 2026, the Attorney General publicly stated that DOJ will send monitors to every state on Election Day and increased the number of personnel to be deployed to over 1,000.[5] This makes clear that the Justice Department's election monitoring plans are rapidly evolving and expanding. This development generated new and urgent concern over DOJ's monitoring plans for Election Day, so Plaintiff accordingly filed a motion for emergency relief asking the Court to compel Defendant to process and produce the information and records before Election Day.

## ARGUMENT

Plaintiff's Motion is requesting an extraordinary remedy. A preliminary injunction in FOIA litigation results in the Court requiring the processing and production of responsive documents by a certain date, and is considered a mandatory preliminary injunction. *Democracy*

---

[4] *See* Complaint [1] Exhibit B.
[5] Frazao, *Id.*

*Forward Foundation v. Office of Management and Budget*, 780 F. Supp. 3d 61, 72 (D.D.C. 2025) (citing *Daily Caller v. U.S. Department of State*, 152 F. Supp. 3d 1, 5–6 (D.D.C. 2015). Because these mandatory preliminary injunctions "alter, rather than preserve, the status quo by commanding some positive act," judges have developed precedent in the District of Columbia that requires "the moving party to 'meet a higher standard than in the ordinary case by showing clearly that he or she is entitled to relief or that extreme or very serious damage will result from the denial of the injunction.'" *Id.*, at 72 (quoting *Elec. Priv. Info. Ctr. V. Dep't of Just.*, 15 F. Supp. 3d 32, 39 (D.D.C. 2014).

The circumstances surrounding Plaintiff's Motion clear that higher bar. Indeed, the Plaintiff is able to clearly show *both* that it is entitled to relief and that extreme damage will result from the denial of the injunction. The interests at stake and the risk of irreparable harm due to the fast-approaching 2026 midterm general election, moreover, further justify the need for the Court to require the Defendant to process and produce the information and records at issue on an accelerated timeline.

Defendant attempted to raise in its Brief in Opposition that Plaintiff's original request did not request expedited processing and is therefore disqualified from seeking emergency relief, but that is neither a statutory requirement nor a jurisprudential standard. Defendant also made general claims that it is likely some of the information and records requested are subject to exemption. To be clear, Plaintiff is not seeking a blanket and unequivocal release of all documents and records. Rather, Plaintiff is asking the Court to compel Defendant to actually process and produce appropriately responsive information and records, and that the Court supervise the actions of Defendant to ensure compliance. The Court is well within its authority, both statutorily and based on governing precedent, to grant the relief requested by Plaintiff.

## I. The Court has Jurisdiction to Grant the Requested Relief

The FOIA statute provides jurisdiction for this Court to consider this matter and grant all necessary injunctive relief. It states in part, "On complaint, the district court of the United States . . . in the District of Columbia, has jurisdiction to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant. In such a case the court shall determine the matter de novo . . . ." 5 U.S.C. § 552(a)(4)(B).

The requesting party may bring such a complaint before the district court when an agency fails to comply with the applicable time-limit provisions in the FOIA statute, and a requester "shall be deemed to have exhausted his administrative remedies with respect to such request." *Id.* § 552(a)(6)(C)(i); *see also Oglesby v. Dep't of the Army*, 920 F.2d 57, 62 (D.C. Cir. 1990) (holding that a requester may bring suit if an agency fails to comply with statutory time limits). This includes a failure to respond to a FOIA request within the statutorily imposed timeframe. *See Wash. Post v. Dep't of Homeland Sec.*, 459 F. Supp. 2d 61, 74 (D.D.C. 2006) ("failure to process FOIA requests in a timely fashion is 'tantamount to denial.'") (quoting H.R. Rep. No. 93-876, at 6 (1974)).

As a result of this failure on the part of Defendant, the Plaintiff is deemed to have exhausted its administrative remedies. *Citizens for Responsibility and Ethics in Washington v. FCC*, 711 F.3d 180, 184 (D.C. Cir. 2013). The NAACP has therefore exhausted all applicable administrative remedies, and its claim is ripe for adjudication.

## II. Emergency Relief in the Form of a Mandatory Preliminary Injunction is Appropriate and Necessary

When considering a plaintiff's request for a preliminary injunction, the standard is clear: "A court must weigh four factors: (1) whether the plaintiff has a substantial likelihood of success on

the merits; (2) whether the plaintiff would suffer irreparable injury were an injunction not granted; (3) whether an injunction would substantially injure other interested parties; and (4) whether the grant of an injunction would further the public interest." *Al-Fayed v. C.I.A.*, 254 F.3d 300, 303 (D.C. Cir. 2001).

Crucially, a plaintiff is not required to prevail on each of the four factors. *Long v. Dep't of Homeland Sec.*, 436 F. Supp. 2d 38, 42 (D.D.C. 2006). "Rather, these factors must be viewed as a continuum, with more of one factor compensating for less of another." *Id.* (citing *Washington Metro. Area Transit Comm'n v. Holiday Tours, Inc.*, 559 F.2d 841, 843–45 (D.C. Cir. 1977)). For example, "An injunction may be justified 'where there is a particularly strong likelihood of success on the merits even if there is a relatively slight showing of irreparable injury.'" *Id.* (quoting *CityFed Fin. Corp. v. Off. of Thrift Supervision*, 58 F.3d 738, 747 (D.C. Cir. 1995)). When the factors weigh differently, for example, and "the other three factors strongly favor interim relief, a court may grant injunctive relief when the moving party has merely made out a 'substantial' case on the merits." *Id.* (quoting *Washington Metro. Area Transit Comm'n*, 559 F.2d at 843–45). A court may, therefore, issue an injunction "with either a high probability of success and some injury, or vice versa." *Cuomo v. United States Nuclear Regul. Comm'n*, 772 F.2d 972, 974 (D.C. Cir. 1985).

Preliminary injunctions requiring the government to process a FOIA request and produce responsive documents by a certain date are termed "mandatory" preliminary injunctions. *Democracy Forward*, 780 F. Supp. 3d., at 72 (quoting *Daily Caller*, 152 F. Supp. 3d at 5–6). As noted earlier, it is crucial to understand that mandatory preliminary injunctions are injunctions that "alter, rather than preserve, the *status quo* by commanding some positive act." *Daily Caller*, 152 F. Supp. 3d at 6.

Due to the commanding nature of a mandatory injunction, the moving party is required to "meet a higher standard than in the ordinary case by showing clearly that he or she is entitled to relief or that extreme or very serious damage will result from the denial of the injunction." *Elec. Priv. Info. Ctr. v. Dep't of Just.*, 15 F. Supp. 3d 32, 39 (D.D.C. 2014). "It therefore makes sense that 'preliminary injunctions are ordinarily not awarded in FOIA cases.'" *Democracy Forward*, 780 F. Supp. 3d., at 72 (quoting *Ctr. for Pub. Integrity v. U.S. Dep't of Def.*, 411 F. Supp. 3d 5, 10 (D.D.C. 2019).

Plaintiff NAACP satisfies this higher bar because it is clearly entitled to the underlying relief requested in the Complaint. Plaintiff requests that the Court intervene to compel government production. Additionally, denial of the injunction will result in very serious and irreparable damage. Finally, the remaining two factors of the traditional four-factor consideration that courts use—harm to other parties and public interest—also sound in favor of granting Plaintiff's requested relief.

### *A. NAACP is clearly entitled to relief on the merits*

The NAACP is beyond likely to succeed on the merits of the underlying FOIA action seeking judicial intervention. The text of the FOIA statute is clear; when the federal government does not produce its final determination within the prescribed timeframe, the requesting party has the right to seek judicial intervention to compel production. "On complaint, the district court of the United States in the district in which the complainant resides, or has his principal place of business, or in which the agency records are situated, or in the District of Columbia, has jurisdiction to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant." 5 U.S.C. § 552(a)(4)(B).

The Records and information sought are clearly within the bounds of what is producible under FOIA

Defendant and Plaintiff agree on one point in particular: "A plaintiff does not show substantive entitlement to records merely because an agency fails to make a determination within twenty working days of the request." Op. Brief [17] at 9. That is true because the FOIA statute itself provides the entitlement to records. The federal government must turn over records and information unless the request fits into an area of withholding under an exemption. 5 U.S.C. § 552(a)(8)(A)(i).

The records requested, moreover, by and large fit squarely within the bounds of regular, producible records. Defendant expends considerable effort gesturing at a broad assertion that "Plaintiff is not entitled to the records sought by a date certain because Defendant must first determine whether documents are exempt and complete the consultation process." Op. Brief [17] at 13–16. Defendant attempts to use the possibility of withholding records as grounds to undercut the likelihood of Plaintiff winning the relief it seeks, but that theory does not bear the weight it attempts to support.

To begin, Defendant had the opportunity to make such a determination of compliance; that is precisely what Defendant was supposed to do during the initial twenty-day period of review. Even in the period since the filing of this action, Defendant evidently has not managed this requirement. *See* Op. Brief [17] Ex. A Declaration of John Buchko.

Taking Defendant at its word regarding concern of the release of exempted information and records, however, the Opposition Brief can only point to one category of the twenty requests contained in Plaintiff's FOIA request as an item Defendant believes to be actually exempt. Defendant raises potentially withholding information under Exemption 5's coverage of attorney-

client and work product as it relates to Plaintiff's second category of records requested. Op. Brief [17] at 13. Defendant mentions this particular item, along with a general concern over inter-agency records, which might implicate categories 17 and 18, but Defendant fails to even raise that and instead paints with such a broad brush that it is difficult to make out even a silhouette of a claim to exemption. Beyond that, Defendant does not point to other categories from the FOIA request that would be subject to withholding due to an exemption. Thus Plaintiff's underlying request for records would certainly prevail on the merits, as it is requesting almost entirely non-exempt records and information.

Defendant cites several cases dealing with "questions disguised as a FOIA request," but those differ entirely from the information sought in the instant case. For example, *Gelb v. Dep't of Def.*, Civ. A. No. 23-0995 (JMC), 2025 WL 49882, (D.D.C. 2025), dealt with a plaintiff's request that the government create a computer program or query a database to analyze data. Likewise, in *Nat'l Sec. Counselors v. CIA*, 898 F. Supp. 2d 233 (D.D.C. 2012), plaintiffs asked the CIA for information related to aggregate data of a field the agency did not track. Finally, the FOIA request in *Forsham v. Harris*, 445 U.S. 169 (1980) dealt with producing documents created by a private party to which the federal government had access.

To be clear, Plaintiff is not asking Defendant to "conduct research" by "answering questions disguised as a FOIA request." Opposition Brief [17], at 24. Specifically, Defendant points to the first category of information sought in Plaintiff's FOIA request, "Legal authority, if any, of the Department of Justice to deploy election monitors." Comp. Ex. A, pg. 2. As a preliminary matter, Plaintiff is alarmed by Defendant's suggestion that it would need to conduct legal research *ex post facto* for an action it has already taken and an action that is currently planning to carry out in every state during the general election. That aside, Plaintiff notes that all twenty categories of

records requested are within the context of "all responsive records created, issued, or in effect from January 20, 2025 through September 1, 2026" and further asking for "records containing" the information sought, which would not result in the creation of records. Compl. Ex. A at 2. Simply put, no research project is required to comply with Plaintiff's FOIA request.

Defendant conflates the merits of the underlying FOIA action seeking to compel the production of the documents with Plaintiff's Motion for Emergency Relief.

When a Court considers the merits of whether a movant is entitled to the relief sought, the Court is analyzing the underlying case of the filed complaint. In this instance, that is Plaintiff's entitlement to the records and information described in the original FOIA request and the subsequent complaint in district court for judicial intervention to compel their production. The validity of accelerated production, the request for which came in the instant motion, is not the merits of the case.

Rather, the Court evaluates Plaintiff's motion for accelerated production, in part, on how clearly entitled Plaintiff is to the relief it seeks in its complaint (i.e. judicial intervention to compel the records, and the applicability of FOIA to the records and information requested). Defendant references the standard for assessing the strength of Plaintiff's request for accelerated production in its analysis of Plaintiff's likelihood of succeed on the merits. That is in error.

More concerning, Defendant provides the Court with a misreading of the opinion it cites to buttress its hollow point. Opposition Brief [17], at 9. Defendant points to the Court's opinion in *Daily Caller v. Dep't of State* as support that Plaintiff is not likely to succeed in requesting accelerated processing, which is not the merits of the underlying case. *Id.* When taken in fuller context, however, the Court in *Daily Caller* expressed a different point even than what Defendant characterized. "[T]he fact that the State Department did not issue a final determination within the

twenty-day statutory deadline is sufficient to merit immediate judicial review of the agency's diligence in responding to the plaintiff's requests." *Daily Caller v. Dep't of State*, 152 F. Supp. 3d 1, 11 (D.D.C. 2015). This completely contradicts Defendant's assertion that "CRT's failure to make a determination on Plaintiff's FOIA request within twenty working days does not entitle Plaintiff to relief." Op. Brief [17] at 9.

To be sure, the Court continued, "Standing alone, however, this fact does not conclusively demonstrate that the plaintiff is likely to prevail in its underlying effort to accelerate the processing of its FOIA requests and the ultimate production of any responsive, non-exempt records." *Id.* This actually advances Plaintiff's point, too, because it makes clear that, contrary to Defendant's attempt to cloud the plain text, failure to issue a final determination in the twenty-day deadline is sufficient to get judicial review of the case, which is the merits of the case. "[The twenty-day] provision ... serves primarily as a means to obtain immediate judicial supervision over an agency's response to an outstanding FOIA request." *Id.*, at 10.

Unlike in *Daily Caller*, Plaintiff is not asking the Court for accelerated processing on the grounds that Plaintiff has a clear likelihood of success on the merits alone; rather, Plaintiff has made clear that the other factors such as irreparable injury and public interest, along with the clear urgency of the timeline provide the necessary force behind its request for accelerated relief.

### *B. NAACP will suffer irreparable injury*

The D.C. Circuit "has set a high standard for irreparable injury." *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006). "First, the injury 'must be both certain and great; it must be actual and not theoretical.' " *Id.* (quoting *Wisc. Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985) (per curiam)). "Second, the injury must be beyond remediation." *Id.* In the FOIA context, courts in the District of Columbia have only found in "a few rare FOIA cases in

this District" that delay in processing and production would result in irreparable harm. *Brennan Center for Justice at NYU School of Law v. Department of Commerce*, 498 F. Supp. 3d 87, 101 (D.D.C. 2020).

In a recent case before the U.S. District Court for the District of Columbia, Democracy Forward unsuccessfully sought a preliminary injunction to fulfill its FOIA request on an expedited timeline. *Democracy Forward Foundation v. Office of Management and Budget*, 780 F. Supp. 3d 61 (D.D.C. 2025). Critically, the Court found in that case that the plaintiff did not meet the burden of justifying the Court granting relief to expedite the FOIA request. *Id*. In particular, the Court there found that there was not a "sufficiently imminent event." *Id* at 65. That case dealt with employment decisions, layoffs, and firings in a new administration. In that instance, the Court empathized with those who lost their jobs, but ultimately determined that the records and information requested dealt with a past event.

In contrast, Plaintiff's request is directly regarding an imminent event and the information sought will further Plaintiff's core organizational mission and function. The National Association for the Advancement of Colored People (NAACP) is the oldest and largest civil rights organization in the country. The NAACP works to ensure full access to the ballot and conducts voter education to ensure that there is transparency and understanding regarding all state laws and policies concerning Election Day. The NAACP has historically opposed voter suppression efforts through outright threats and ballot denial, voter intimidation and efforts to make it more difficult to exercise the right to vote. Based on publicly available reporting, it is clear that Defendant's election monitoring plan is unprecedented, has expanded to all 50 states and will involve the deployment of individuals who stand to materially alter and change the experience at the ballot box for its members. Moreover, the Department's monitoring plan appears to be at

odds with long-standing policies, existing laws and long-held guardrails. Basic information and transparency are needed given that the right to vote is at stake.

### *C. The Mandatory Preliminary Injunction Would Not Harm Defendant and the Public Interest is Furthered by a Mandatory Preliminary Injunction*

Defendant proposes that the public interest is best served by denial of Plaintiff's request on the grounds that in granting the relief sought, the Court would permit Plaintiff to "jump" ahead in line. Op. Brief [17] at 24-25. This argument is more aptly applied to a request of an individual nature and not, as here, a request dealing with such an issue of public importance and significance to such a wide audience.

The information sought will provide the public with information on the actual operations of the Defendant in conducting its so-called monitor program. This will include basic information regarding the people who will serve as monitors, the issues that they will be focused on, information regarding notice and consent for the public and state and local officials alike. The information will help the NAACP understand whether the Justice Department will, once again, deploy any DOJ attorneys convicted of election crimes, deploy FBI agents, deploy criminal prosecutors, provide adequate notice to state and local government officials, provide notice to the public, adhere to any relevant state restrictions or rules, and describe any training and note the purpose for deploying these monitors. Simply put, the information sought will provide the public—both voters and local election officials alike—with the details of the Defendant's planned actions to ensure that voters are able to exercise their fundamental right to vote this Election Day.

There is another factor of the public interest at stake, too, and that is not allowing the federal government to drag its feet and not comply with its statutory duties. The Court is

positioned to hold Defendant to account and that is of the utmost interest of the public. The Defendant is required by statute to comply with FOIA. While Defendant raises general concerns over limited resources in the Civil Rights Division, that argument flickers away when considered against its backdrop of recent hiring and newfound resources being poured into an election monitoring effort that Attorney General Blanche says will reach all 50 states. To be clear, Defendant *is not* required by any statute to overextend itself by launching an unprecedented and undefined deployment of “election monitors” to jurisdictions across the country. In contrast, Defendant *is* required to adhere to limits on its authority, follow the law and comply with its affirmative duties such as appropriately responding to FOIA requests.

### III. NAACP’s Request for Accelerated Processing is Appropriate

The Defendant accurately points to the Plaintiff’s omission of a request for expedited processing at the agency-level. That fact, however, is not a disqualification for seeking emergency relief on an accelerated timeline. The FOIA statute is clear on its procedural requirements and timelines, and nowhere does it state that a District Court is barred from granting emergency or accelerated relief if a FOIA requester did not submit to the agency a request for expedited processing. Exhaustion, moreover, is a clear standard: “[A] FOIA requester is ‘deemed to have exhausted his administrative remedies’ if the agency fails to comply with applicable statutory time limits.” *Democracy Forward Foundation v. Office of Management and Budget*, 780 F. Supp. 3d 6, 70 (2025) (quoting *Machado Amadis v. U.S. Dep’t of State*, 971 F.3d 364, 372 (D.C. Cir. 2020).

To the contrary of Defendant’s narrow and quite novel reading of FOIA, the statute and judicial precedent provide broad equitable power to the District Court. The Court is able to review FOIA requests and grant far-reaching remedies to ensure the statute has meaning. “FOIA

imposes no limits on courts' equitable powers in enforcing its terms.” *Payne Enterprises, Inc. v. U.S.*, 837 F.2d 486, 494 (D.C. Cir. 1988). The Supreme Court has historically recognized the breadth of tools that the FOIA statute provides a District Court sitting in equity. “The broad language of the FOIA, with its obvious emphasis on disclosure and with its exemptions carefully delineated as exceptions” coupled with “the truism that Congress knows how to deprive a court of broad equitable power when it chooses so to do…and the fact that the Act, to a definite degree, makes the District Court the enforcement arm of the statute.” *Renegotiation Bd. V. Bannercraft Clothing Co., Inc.*, 415 U.S. 1, 19–20 (1974). This makes clear that the Court wields appropriate means to handle FOIA cases with a proper end. The Supreme Court further articulated that “the express vesting of equitable jurisdiction in the district court by § 552(a)” further rebuts any notion “that Congress sought to limit the inherent powers of an equity court.” *Id.*

Amid that background, the Court is well-positioned to grant Plaintiff’s request for accelerated processing.

### ***A. Requesting Expedited Processing by the Agency is Not a Requirement for the Court to Grant Emergency Relief in FOIA Litigation***

As a preliminary matter, the Plaintiff welcomes the opportunity to directly address the issue of expedited processing at the agency-level. For one, Defendant appears to make a failure-to-exhaust argument in a *sua sponte* attempt to create a heretofore non-existent procedural requirement that a plaintiff must first seek agency-level expedited processing in order to request accelerated relief from the Court. “[T]he issue of whether Plaintiff’s request should be expedited is not properly before the Court and the motion for emergency relief should be denied on that basis.” Op. Brief [17] at 11-12. In support of this newly minted procedural requirement,

Defendant cites to a recent case in which a Court found that a plaintiff's complaint could not proceed because the plaintiff had not responded to the agency's request for clarification of the records requested. *Howell v. Dept. of Homeland Sec*., Civ. A. No. 24-2791 (JMC), 2024 WL 4582978, at *4 (D.D.C. Oct. 25, 2024). Plaintiff does not see the connection between this case and the procedural prerequisite of first asking an agency for expedited processing prior to seeking accelerated relief from the Court that Defendant has seemingly created out of whole cloth.

Beyond that, Defendant hangs much of its argument that an agency-level expedited request is a procedural requirement for accelerated relief on two cases. Plaintiff will address each in turn.

Defendant writes that the Court in *Harrington v. Food and Drug Administration* "[held] that it was inappropriate for Plaintiff to 'jump the line' because Plaintiff 'did not so much as seek expedited processing.'" Opposition to Motion for Emergency Relief [17], p. 19 (quoting *Harrington v. Food and Drug Administration*, 581 F. Supp. 3d 145, 151 (D.D.C. 2022)). Indeed, the Court in *Harrington* mentioned that the plaintiff had not sought expedited processing, but it certainly did not hold that requesting expedited relief at the District Court was "inappropriate" because the plaintiff had not made an agency-level request. Rather, when fully quoted, it is clear that the Court found that the plaintiff "put forth no compelling reason why he should be allowed to jump the line" and therefore denied the relief. *Id.* To be sure, the Court went on to write, "Harrington did not so much as seek expedited processing, and even if he had, he supplies no reason to think that he would have satisfied the Circuit's stringent test for obtaining special treatment." *Id.* To the contrary, Plaintiff in the instant case provides the Court with clear grounds to meet the Circuit's rigorous test for expedited relief. As detailed below, the information that is

the subject of the underlying FOIA request is *both* urgent, time sensitive, concerns actual and alleged Federal Government activity and relates to a general federal election scheduled to take place in 18 days.

The Court in *Harrington* plainly used the plaintiff's omission of an agency-level expedited request as a part of its analysis of the compelling need prong of the FOIA statute dealing with expedited requests (5 U.S.C. § 552(a)(6)(E)(i)), and while the Court ultimately denied the plaintiff's request for expedited processing, two things are clear from *Harrington*: (i) given that the Court there considered the expedited request despite the plaintiff not seeking it at the agency-level, Defendant is misguided in its position that an agency-level request is a procedural requirement to seeking expedited relief from a District Court and (ii) omission of an agency-level expedited request is not the end of the road for such analysis.

Defendant also points to *Morales v. Secretary, U.S. Department of State* for the notion that not seeking expedited processing from the agency "place[s] in doubt" the characterization of the request as an emergency. Opposition to Motion for Emergency Relief [17], pp. 19–20 (quoting *Morales v. Secretary, U.S. Department of State*, 220 F. Supp. 3d 1, 5 (D.D.C. 2016). However, that case is distinguishable. That case dealt with FOIA in the context of an affirmative immigration petition that spanned years. There is simply no overlap in the circumstances of *Morales* and Plaintiff's case given the clear exigency underlying Plaintiff's FOIA request seeking information regarding plans for mass deployment of Justice Department resources in a federal election scheduled to take place in just over two weeks. *Morales*, therefore, does not advance or support Defendant's argument in any way.

### ***B. The Court Has Latitude to Consider Factual Developments Outside the Administrative Record***

Even when reviewing a FOIA complaint, a court is able to look at the situation in full context—fourth-dimensionally—to consider the evolution of circumstances that can lead to an emergency situation. That makes sense given what we know about the equitable powers the Court wields when reviewing a FOIA action.

When "assessing irreparable harm or the other preliminary injunction factors," a court may "consider events that have transpired" since the initial request. *Protect Democracy Project, Inc. v. U.S. Dep't of Def.*, 263 F. Supp. 3d 293, 300 (D.D.C. 2017). In that instance, the Court found that circumstances surrounding the underlying information requested related to the administration's legal authority to launch missile strikes relating to "increasing U.S. hostility towards the Syrian government" and that, coupled with additional developing facts, made "it more likely that irreparable harm [would] result without expedited processing." *Id.*

In the current case, the administration has dramatically increased the scale and the scope of their purported plans to deploy "election monitors" for the November 3, 2026, midterm general election. Even since the filing of the Motion for Emergency Relief in this FOIA matter, new reporting has uncovered deeply concerning information surrounding events that prompted the NAACP's initial FOIA request on September 1, 2026, that, had it been known at the time, would have warranted a request to expedite. For example, in the underlying FOIA request, the NAACP cited the Civil Rights Division's deployment of poll monitors to several jurisdictions during Arizona's July 21, 2026, primary election with very little public information surrounding that activity that would have supported a request for expedited processing under the three factors an agency considers. On October 6, 2026, however, newly released information generated public reporting that the monitors would be sent to all 50 states, and that criminal prosecutors and an FBI agent were present at the Arizona polling locations as part of the Civil Rights Division's

election monitoring activities.

Defendant attempts to sweep under the rug the public statements made by administration officials regarding the monitors by downplaying the statements made by the United States Attorney General on October 4, 2026. As the nation's chief law enforcement official, his statements are not dismissed as rhetoric and are interpreted as outlining the official actions of the Department. The Attorney General's statements outlining the Justice Department's plans to deploy more than 1000 monitors has generated new fears of intimidation. Blanche's statements that DOJ monitors are "going to every state" has raised alarms across the country. [6]

In its analysis of Plaintiff's claimed injury, Defendant flatly denies the significance of the FBI Director Patel's September 15, 2026 statements. On page 21 of its Opposition Brief [17], Defendant states that Plaintiff's request does not seek records regarding a particular FBI program, however there are multiple categories of records that would include such FBI activity. Additionally, clarity of whether the FBI agents Director Patel mentioned would be included in the monitoring activities would also be important and relevant information. That an FBI agent has already been deployed during the primary election raises questions that must be answered regarding plans to engage FBI agents during the November 3, 2026 election.

### *C. The Underlying FOIA Complaint Meets the Established Standard for Expedited Processing*

The NAACP's underlying complaint is not linked to a denial of a request for expedited processing. Rather, the merits of the case focus on the failure of the Defendant to comply with

[6] Frazao, Kristine, "*Justice Department to Deploy Election Monitors Nationwide as Critics Warn of Intimidation*," CBS Austion (October 5, 2026). https://cbsaustin.com/news/nation-world/justice-department-to-deploy-election-monitors-nationwide-as-critics-warn-of-intimidation-ice-agents-trump-administration-national-guard?teaserSource=trending.

the basic provisions of the FOIA statute as it relates to the 20-business-day determination deadline. Given, however, that jurisprudence dealing with mandatory preliminary injunctions in FOIA litigation often involve an agency-level procedural history that includes an expedited request, it may be useful for the Court to consider the analysis for expedited relief provided for by the FOIA statute.

At the outset, it is important to note that the expedited processing of a party's FOIA request results in the agency moving that FOIA request "to the front of the line—ahead of requests submitted by other concerned citizens also seeking transparency from the federal government." *Democracy Forward Foundation v. Office of Management and Budget*, 780 F. Supp. 3d 61, 66 (2025). Congress, therefore, provides for expedited processing of requests only in narrow circumstances to prevent unfairly disadvantaging typical FOIA requesters. *Id*.

Expedited processing of FOIA requests is appropriate "in cases in which the person requesting the records demonstrates a compelling need; and in other cases determined by the agency." 5 U.S.C. § 552(a)(6)(E)(i). Should the Court here seek to utilize jurisprudence dealing with expedited processing requests, the Plaintiff meets the burden under the first prong: there is a compelling and time-sensitive need for the release of the records requested that concern the exercise of a right central to democracy.

<u>Plaintiff's FOIA request demonstrates a compelling need</u>

"FOIA's definition of 'compelling need' has two branches: "(I) that a failure to obtain requested records on an expedited basis ... could reasonably be expected to pose an imminent threat to the life or physical safety of an individual; or (II) with respect to a request made by a person primarily engaged in disseminating information, urgency to inform the public concerning

actual or alleged Federal Government activity." *Al-Fayed v. C.I.A.*, 254 F.3d 300, 308 (D.C. Cir. 2001) (quoting 5 U.S.C. § 552(a)(6)(E)(v)).

NAACP, as the requester, and the nature of the information requested squarely fit within the second prong of what defines a compelling need. As stated in the underlying FOIA request, "The National Association for the Advancement of Colored People (hereafter, "NAACP") is a non-profit corporation, organized under section 501(c)(3) of the Internal Revenue Code. NAACP is committed to protecting and expanding voting rights, ensuring the integrity of our elections, and educating voters. NAACP utilizes a combination of research, litigation and advocacy to advance its mission. NAACP intends to analyze the information responsive to this request and to share its analysis with the public."

The information that is the subject of the underlying FOIA request is *both* urgent, and concerning actual and alleged Federal Government activity. To be sure, "in determining whether requesters have demonstrated 'urgency to inform,' and hence 'compelling need,' courts must consider at least three factors: (1) whether the request concerns a matter of current exigency to the American public; (2) whether the consequences of delaying a response would compromise a significant recognized interest; and (3) whether the request concerns federal government activity." *Al-Fayed*, 254 F.3d at 310.

The Request Concerns a Matter of Current Exigency to the American Public

Beginning with the first factor, there is a need for the American public—both voters and local election officials—to know the specifics of the Civil Rights Division's unprecedented deployment of over a thousand DOJ lawyers and criminal law enforcement personnel to polling locations across the country on Election Day. The public deserves to know who these individuals

will be, what their enforcement priorities are, and under what authority they are being sent. Crucially, with the ever-expanding size and scope of the Defendant's plans, the public needs to know where specifically the Defendant is sending its personnel. The exigency of the need to inform stems from the timeline; the November 3, 2026 midterm general election is less than three weeks away.

Delay in Response Would Compromise a Significant Recognized Interest

Next, there is perhaps no greater interest in our democracy than the right to vote. The right to vote is chief among the bundle of rights that define American citizenship. Over a half-century ago, the Supreme Court cemented that principle, writing that "the right to exercise the franchise in a free and unimpaired manner is preservative of other basic civil and political rights." *Reynolds v. Sims*, 377 U.S. 533, at 562 (1964). The Supreme Court recognized that many states have statutes in place where "law enforcement officers generally are barred from the vicinity of the polls to avoid any appearance of coercion in the electoral process." *Burson v. Freeman*, 504 U.S. 191, 207 (1992). Given the recent reporting that DOJ confirmed it will send criminal prosecutors to the polls, the information sought in the FOIA request is necessary to provide more details on, for example, what these law enforcement personnel will be enforcing, under what authority, and to what extent they are coordinating with local officials to ensure full compliance with state law.

Moreover, "Courts that have found that delay would compromise a significant recognized interest have tended to look for 'an imminent event, after which ... the utility of the records would be lessened or lost.'" *Democracy Forward*, 780 F. Supp. 3d at 74 (citing *N.Y. Times Co. v. Def. Health Agency*, No. 21-cv-566, 2021 WL 1614817, *8 (D.D.C. Apr. 25, 2021)). Here, that imminent event is concrete; it is Election Day. The processing and production of the FOIA

request following Election Day would significantly lessen the value of the information for the American public and thus would have grave consequences for the fundamental right to vote.

The Request Concerns Federal Government Activity

Finally, the third factor concerning Federal Government activity is clear: the information requested by Plaintiff deals exclusively with the actual activities of the Federal Government during the various primaries and the alleged nationwide activity it is planning on Election Day.

**D. The Court Can Grant Accelerated Relief in the Alternative Through the Issuance of a Writ of Mandamus**

If the Court finds Plaintiff's request for a mandatory preliminary injunction is improper based on the four-factor test or because Plaintiff did not first request agency-level expedited processing, there remains the availability of a Writ of Mandamus. While a Writ of Mandamus is not the preferred avenue for relief in a FOIA case, it remains an equitable remedy in the judicial toolbox if "(1) the plaintiff has a clear right to relief; (2) the defendant has a clear duty to act; and (3) there is no other adequate remedy available to plaintiff." *Power v. Barnhart*, 292 F.3d 781, 784 (D.C. Cir. 2002) (internal quotation marks omitted). Mandamus is a "drastic" remedy, to be sure, and it is "to be invoked only in extraordinary circumstances." *Allied Chem. Corp. v. Daiflon, Inc.*, 449 U.S. 33, 34, (1980). In the case at hand, however, all three factors are met.

The NAACP has a clear right to relief

The text of FOIA is clear and the records requested are within the purview of the statute. The statute clearly sets the 20-business-day timeline as a safety-valve. With a Writ of Mandamus, the Court would still be able to allow Defendant to process the request with the potential for exemptions pending the Court's supervision. Again, Plaintiff does not seek a blanket, winner-take-all result. Mandamus would, therefore, provide appropriate relief.

The Defendant has a clear duty to act

Defendant must process FOIA requests and, subject to applicable exemptions, produce responsive records. This is not optional or up to discretion. Defendant has already not taken action required of an agency when faced with a FOIA request by shirking its duty to properly determine within twenty working days whether to withhold records or comply with the statute.

There is no other adequate remedy available to NAACP

In other FOIA cases before the Court in this Circuit, Petitions for Writs of Mandamus in a FOIA action have fallen under this third prong. See, e.g., *ExxonMobil Corp v. Department of Commerce*, 828 F. Supp. 2d 97, 109 (D.D.C. 2011); *National Sec. Counselors v. C.I.A.*, 898 F. Supp. 2d 233, 268 (D.D.C. 2012). In this case, however, if the Court determines it lacks authority to accelerate the timeline of the production of records under FOIA, there would plainly not exist an adequate remedy for Plaintiff to obtain the records and information ahead of Election Day.

**CONCLUSION**

For the reasons set forth above, the Court should grant Plaintiff's motion for emergency relief and order Defendant to immediately begin processing the FOIA request and produce any non-exempt documents within one (1) week of the Court's order.

Dated: October 16, 2026

Respectfully Submitted,

*/s/ Max L. Meyers*
Max L. Meyers*
Kristen M. Clarke*
Anthony Ashton
NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE
4805 Mt. Hope Drive
Baltimore, MD 21215
(480) 580-5777
mmeyers@naacpnet.org

* Pro hac vice