UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

* * * * * * * * * * * * * * * *

| | | |
|---|---|---|
| NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE, Plaintiff, | ) | Civil Action No. 26-3461 |
| vs. | ) | |
| HARMEET DHILLON, et al., Defendants. | ) | October 22, 2026 9:59 a.m. Washington, D.C. |

* * * * * * * * * * * * * * * *

**TRANSCRIPT OF MOTION HEARING**
**BEFORE THE HONORABLE SPARKLE L. SOOKNANAN**
**UNITED STATES DISTRICT COURT JUDGE**

**APPEARANCES**:


FOR THE PLAINTIFF:
MAX LEWIS MEYERS
ANTHONY PETER ASHTON
4805 Mt. Hope Drive
Baltimore, MD 20530
(667) 219-0901
mmeyers@naacpnet.org
(410) 580-5777
aashton@naacpnet.org

FOR THE DEFENDANTS:
WILLIAM THANHAUSER
DOJ-USAO
601 D Street, NW
7th Floor
Washington, DC 20530
(202) 252-7706
william.thanhauser@usdoj.gov

Court Reporter: Elizabeth Davila, RPR, FCRR
Official Court Reporter


Proceedings reported by machine shorthand.
Transcript produced by computer-aided transcription.

**P R O C E E D I N G S**

THE COURTROOM DEPUTY: Your Honor, we are on the record this morning in Civil Matter 26-3461, National Association for the Advancement of Colored People versus Harmeet Dhillon, et al.

Counsel for the parties, beginning with the plaintiff, please approach, and note your appearances for the record.

MR. MEYERS: Good morning, Your Honor.

This is Max Meyers for the NAACP, and I also have with me co-counsel Anthony Ashton.

THE COURT: Good morning.

MR. THANHAUSER: Good morning, Your Honor. Will Thanhauser on behalf of the defendants.

THE COURT: Okay. Good morning. Thank you all for being here.

Let me just say, at the outset, that the plaintiffs have made several mistakes in filing this lawsuit and the TRO motion. The lawsuit was first filed by an attorney not barred in this court. The plaintiff named the wrong defendant, requiring an amended complaint after the government had already opposed the plaintiff's TRO motion. And then, the plaintiff's reply brief raised several new arguments not raised in their TRO motion, which is not surprising given the TRO motion was ten pages long, and that

included the cover page.

So the plaintiffs are seeking extraordinary relief at a time when every judge in this court is inundated with emergency cases. You don't just file a complaint, throw a couple of pages together, call it a TRO motion, and then leave it to me to do the work for you. You put the work in before you file a complaint and before you seek a TRO.

So here we are. The government had to file an extra brief so that I wasn't dealing with brand-new arguments in a reply brief that they didn't have a chance to review and then no one could respond to.

I understand this is a busy time for everyone. I have seen my fair share -- and so have my colleagues -- of emergency complaints and TRO motions, and they don't look like this. The plaintiffs put the work in before coming to court.

So I expect, Counsel, that if you engage in further litigation that you will do that and respect my time, respect my colleagues' time, respect the government's time in choosing when and how to initiate litigation.

Here we are. The government has fair arguments about whether the TRO is properly before me, whether I should consider all of these new arguments you made in your reply brief. My goal is to move this case forward as efficiently as possible.

Frankly, it's a waste of my time and the government's time, I think, to deny the TRO on procedural grounds and have everyone re-brief everything. That is especially true given that, at least right now, I am not sure you are entitled to any relief even if I consider all of your belated arguments.

So we'll work through my questions. I will hear from you. You have heard at the top that I am very skeptical that you are entitled to the relief that you seek.

I will work through my questions. I'd ask you to listen to them and answer them, and not tell me all the things you want to tell me. I scheduled a hearing so I could press on some of the issues I am struggling with. I will hear from the government, then we will break; and I will come back and rule on the pending TRO motion.

Who is arguing for the plaintiffs?

MR. MEYERS: I am, Your Honor.

THE COURT: Okay. Please come to the podium.

So I am going to start with the FOIA request, which is the reason we are all here. It is as broad as they come.

The plaintiff is seeking 20 broad categories of information. I am not going to read them because we would be here for a while.

But to summarize this incredibly broad request,

you are asking DOJ for legal authority to deploy election monitors; all records about legal advice and analysis regarding the deployment of monitors; all complaints received by DOJ that led to the deployment of election monitors in any of the locations from the primary in the past and planned for the upcoming midterm; any complaints received from the public; any complaints received from public officials; any complaints received from Wyoming; comprehensive lists of locations of deployment in the past and for the upcoming election; information used to identify jurisdictions where election monitors will be deployed; documents used to provide notice, training materials, qualifications, restrictions, lists of names, employment, department and job titles of every election monitor deployed during primary elections, all election monitors deployed in 2026, all election monitors who will be deployed; confirmation on whether a particular attorney filed with his date of birth is an employee of DOJ; consent received from the jurisdictions; questions about which type of personnel will be used; copies of any and all forms, documents, or reports completed during all election monitoring efforts in primaries; and copies of any and all forms to be completed during all election monitoring efforts in midterm general elections.

This is as broad a FOIA request as I have ever

seen. And it, in my view, seems to request information that is clearly going to be exempt, and information that I am not sure the Department of Justice has ever released publicly.

So you submitted this incredibly broad FOIA request on September 1st, the department acknowledges receipt of it on September 21st. You don't tell the department that you are looking for expedited processing and give them a chance to even consider whether they are going to do that. And then, a month after the FOIA request, you file this complaint, you file a TRO, and you file a 10-page TRO motion asking me to order DOJ to process all of these records right away and give it to you because you need it. A task that is impossible.

Then I find out, from the government's surreply, that they did what was the smart and efficient thing, which was to reach out to you after your TRO motion -- and they have attached the emails -- saying, We have seen this very broad request, we have seen your TRO. Is there any way to narrow it? Are there particular categories that you are interested in receiving on an expedited basis so that we could try to process those and moot the need to come to the court seeking a TRO in a FOIA case?

Quite reasonable on the government's part.

You, Mr. Meyers, you write back right away saying: You will get an answer that morning. You then wait more

than 24 hours to respond, notwithstanding that you are the one saying you need this all done right away. Saying, no, actually, we need everything here urgently; and we need you-all to do it in the next -- where are we? -- October 8, October 20 -- 12 days. Process all of that information, and we're not interested in speaking further.

All of that, to state the obvious, is incredibly unreasonable. I shouldn't be here right now; we shouldn't be having a hearing. I shouldn't be spending my time on this case, a TRO motion in a FOIA case; because back on October the 7th, when the government reached out, you-all should have sat down and had discussions.

You should have taken the government up on its very reasonable offer. You should have looked at your 20-item request and thought about which of those categories you actually need urgently before the election. And for the past -- however many days between now and October 7th, you-all could have been working this out. DOJ could have been prioritizing, processing some of these records. You probably would have already had some records.

Instead, you had the government spend its time briefing it. You had me spend my time reviewing all of those briefs, doing research, getting ready, and having a hearing. Here we are, and you have zero documents.

Tell me how any of that is an acceptable way to

get at what you are looking for, Mr. Meyers?

MR. MEYERS: Thank you, Your Honor.

I will start with the last part first, which was the emails and the opportunity for us to try to winnow down our requests.

I will say there were conversations that supplement the emails. I understand that writing is all that matters when it comes to creating a record.

During the conversations we, essentially, said what would be possible for us to consider when it comes to trying to winnow down the requests and then, ultimately, said: You tell us.

We looked at our records, and everything at that point seemed -- especially given the news, which is something I would like to come back to talk about -- all of the requests seemed particularly relevant at that point, and still do, Your Honor.

THE COURT: I disagree.

When you are requesting records that you know are going to be exempt under -- for example, the deliberative-process privilege and any other number of exceptions that you should know will apply, it is a waste of the government's time to process those records and just tell you "exempt"; or dealing with you coming to the government on a short notice saying: We really need these documents.

So what a plaintiff does in that scenario is sit down and think: What am I actually going to get? Which of these records are going to be nonexempt? What do I need? Recognizing that the government literally cannot give you everything here in the timeline that you want. They are actually being quite reasonable in being willing to have that conversation in the first place.

I don't know how it is in your interest to have spent all of this time to get here and get nothing and, potentially, walk away from here with nothing.

I can count on one hand the number of times I have gotten an emergency motion in a FOIA case. And I can tell you, when I have gotten a TRO, the answer is zero because what does a TRO even mean in a FOIA case? Nothing.

I order the government to process for 14 days and then, do what?

Usually, people come asking for a preliminary injunction. And it is the rare case where any court will even grant a preliminary injunction.

You have asked for a TRO which makes no sense, as a procedural matter, to add on to all of the other procedural missteps you have made.

Putting aside the case law -- which we'll get to, and I am not sure that you meet -- just as a practical matter, I don't know that you have thought through any of

this and taken steps to actually advance your case.

MR. MEYERS: So, Your Honor, I would like to address the issue of exemptions briefly since you brought that up, if that is possible.

I am not sure that -- as far as the exemptions go, it's on the government's -- it's their burden to be able to prove those. When we actually received and we started talking about --

THE COURT: I think you are missing my point, Mr. Meyers.

MR. MEYERS: Yes, Your Honor.

THE COURT: You are the plaintiff. You have come up with this 20-number items that you want. The government will ultimately say what is exempt. But as a seasoned attorney, you can look at your list and you can guess that some of these categories are categories of documents that the government is going to withhold in full under certain exemptions.

Looking at this list, you could guess that some of this information is information that the Department of Justice has never turned over publicly, and with good reason.

So if what you really wanted was to get actual information from the government, as you say, you would look at this list and think: Why would I spend the government's

time processing records that will be exempt? No.

Let's separate this list. Let's think about things that I can actually get, that I actually want. Ask the government to start with processing those and then, eventually, process the other things. And then it is, of course, their burden to say: These are exempt and, then, explain why they are.

But when you are looking for documents in a matter of weeks and you stand your ground on: I want 20 broad categories. Even if they were able to process them, you would never even see them because you would be litigating about exemptions for months or potentially years.

I just don't understand. It makes me question whether what you actually want is documents or what you want is to file this lawsuit and say you are litigating it, frankly.

Because when I think about the steps you have taken, it makes me question whether you are, in good faith, trying to get the government to process some subset of records in an expedited basis.

MR. MEYERS: Thank you. So I will say, at the outset, we did not request expedited processing because we didn't think that our case merited it on September 1st.

After subsequent events escalated the rhetoric, as well as defendants' actions became clear, that was when we

thought that there was this sort of urgency required for that. I will say, had we received --

THE COURT: Did you think you were due for expedited processing when you filed this lawsuit?

MR. MEYERS: It was beginning to teeter on that, Your Honor.

THE COURT: It was beginning to teeter on that?

MR. MEYERS: Yes, Your Honor.

THE COURT: What changed between October 2nd, when you filed this lawsuit -- when did you realize you were entitled to expedited processing; on what date?

MR. MEYERS: It was October 4th, Sunday.

THE COURT: Okay. Why didn't you tell the government then, Hey, actually we think we're now entitled to expedited processing?

MR. MEYERS: We were concerned at that point that by requesting expedited processing that would then further delay the case because it would give them ten additional days before we would be able to actually file any sort of relief seeking Your Honor's intervention in the case.

THE COURT: So you come to me, you file a complaint, you file a TRO that says nothing about expedited processing, that says nothing about you meeting the standards for expedited processing. And it's only after I instructed you to address expedited processing and the

government opposed on that basis, you thought it was okay to brief it?

You thought I would just, on my own, do the work and decide you needed expedited processing?

MR. MEYERS: So, Your Honor, when we filed our TRO, we did list out the classic *Winter* [sic] categories. We did not mention expedited processing --

THE COURT: On your TRO papers, you lose. You didn't meet any of those factors. I don't know how you can show an entitlement to me granting you a TRO, i.e., expedited processing in a FOIA case, without explaining to me how you are entitled to expedited processing.

MR. MEYERS: So when we were initially thinking about the type of relief that we were seeking, emergency relief, we understand expedited processing is its own separate procedure through an agency level. Rather than requesting expedited processing through Your Honor, we were requesting essentially -- and we recognize, also, a novel form of relief in the sense --

THE COURT: It's not a novel form of relief. It's a form of relief that's not permitted.

You don't get a TRO or any type of emergency relief in a FOIA case just because you come to court and you say, Hey, the 20-day window has passed. That's not how likelihood of success on the merits in FOIA cases work if

you had read the case law.

So it's not novel. It's contrary to the case law.

If the government misses a 20-day deadline in a FOIA case, what that gets a plaintiff is coming to court and saying, We are now in litigation. We would like to force the government to start moving on this request and we want the Court to supervise that process.

It does not get a plaintiff immediate release of all of the documents. That's pretty clear in the case law which you, apparently, didn't realize when you filed your TRO motion because your TRO motion which, as I said, is nine pages long of text, just says, Hey, they have missed their 20-day deadline. We think we meet irreparable harm and the other factors, so order them to process all of these documents immediately. That's not how the doctrine works.

Do you recognize that now?

MR. MEYERS: Yes, Your Honor. Yes.

THE COURT: Okay. So you just didn't, again, put in the work before you filed the TRO motion?

MR. MEYERS: I think that it came from a misconception as to what our requested relief was.

At that point, we were thinking -- we certainly are in agreement with Your Honor that simply the 20-day deadline -- and we express this in our reply brief as well -- that the 20-day deadline alone does not give us --

THE COURT: I know.

I am asking you about when you filed your TRO motion. Before you filed a TRO motion in federal court asking me to drop everything and deal with your emergency motion, on top of everything else I am dealing with, did you do the research on the claim and figure out that you were entitled to the relief you were seeking for the reasons you gave me?

MR. MEYERS: Yes, Your Honor. And we actually had determined at that point that -- that's why we initially asked for a writ of mandamus. We didn't think that the door was open for us to be able to go through the expedited process avenue --

THE COURT: You think you are entitled to a writ of mandamus in a FOIA case?

MR. MEYERS: After we --

THE COURT: Mr. Meyers, you want documents but you did not do all of the things you should have done to get them. You want documents on an expedited basis. You want everyone to drop everything and deal with your case. And in my view, you did not put in the time or do the work to get that. It's your burden.

A TRO is an extraordinary remedy. I've never been asked for one in a FOIA case. And when I have been asked for one on a PI, not a TRO, I have had plaintiffs check the

boxes, do the work, seek expedited review, give the government time, be willing to sit down and resolve it without even having to come to me, and brief the issues thoroughly. It's not my job to do that for you.

MR. MEYERS: Absolutely, Your Honor.

THE COURT: So we have talked about the practicality, and you haven't overcome any of my concerns there.

Let me just now walk through, now, on the merits, some of these issues that you eventually briefed in your reply and that the government responded to in their surreply.

So you argue, pretty broadly, that there is irreparable harm because November 3rd is an imminent event. The records that you have requested will be necessary in advance of the election. But tell me how these records actually go to the impingement of the right to vote.

When I say "these records," I mean all 20 categories. Because you are still standing here before me, after I told you that the request is incredibly broad, telling me that you need all 20 categories of them.

Tell me why you meet irreparable harm, because I don't think you do at all.

MR. MEYERS: So, to begin with the last point, Your Honor, we do have -- at this point, given the timeline,

we do have a narrowed-down list of categories. So we will be able to --

THE COURT: Have you talked to the government about that?

MR. MEYERS: No, Your Honor.

THE COURT: Why are you wasting my time?

The government offered to talk to you, to talk about narrowing. Why are you telling me that for the first time?

MR. MEYERS: By the time the briefing was done and, also, I understand that my opposing counsel was out of town as well. So I was waiting until we had an opportunity to actually see each other here, essentially, to talk about that.

THE COURT: When did you decide you were going to narrow the list?

MR. MEYERS: We finalized the list of narrowing yesterday, Your Honor.

THE COURT: Here is the thing, Mr. Meyers. I am not going to sit here with you and work through narrowing with the government. You finally realized that the list was incredibly broad and you now want to narrow.

I am going to deny your TRO motion because, on your own representation, your list was too broad. And just to be clear on the record, even putting that aside, why I

would be denying your motion in any event: A TRO is an extraordinary remedy, which you know, and you know why.

I don't think you have met any of the factors for them. You cannot show irreparable harm on this record. You have said that the election is an imminent event, but you have not at all explained how release of the 20 categories of records -- a lot of which are actually records that will be exempt -- are actually relevant to prevent any impingement of the right to vote; there are many cases supporting that. And I don't think you succeed on the merits.

As I have said to you before, just because the government misses a 20-day deadline doesn't give you a right to relief. You must show that you are entitled to expedited processing given that's what you are requiring me to do. The fact that you didn't request it in the first place tells me that I am not sure you thought you were entitled to it, which you admitted. At some point after you filed the lawsuit, you thought you were entitled to it. It requires you to demonstrate a compelling need and additional agency designated circumstances. The government has explained that it doesn't think you can meet that standard.

You have said that this is information and that you are a qualifying disseminator; I am not sure that you are. The government said you are not primarily engaged in

the dissemination of information; you haven't cited any cases supporting your position on that.

Again, the government reached out to you to try to process some of these records on an expedited basis and you refused which, again, cuts against your claim that you are entitled to expedited processing.

I am going to deny your TRO. And I am going to order you to now sit down with the government, since you have finally come to narrowing categories, and talk to them and tell them which records you are particularly interested in. You-all can file a joint status report for me telling me what you have discussed and what you propose; and if you disagree, what those disagreements are and, then, I can try to resolve that.

By the way, if you had done that on October 7, you would already have some documents, and I would have been able to supervise some production of documents. Instead, you wasted all of that time and my time preparing for this hearing only to show up here and, by narrowing your request, effectively concede that you are not entitled to a TRO or any type of emergency relief with respect to the FOIA request and those 20 categories that you decided to litigate.

So I suggest you-all use this time, since you are here today, to have your discussions about narrowing. You

can file a JSR for me by Monday telling me where you are with respect to narrowing, whether the government is able to process certain of your categories, and on what timeline. If you have disagreements, you can tell me then.

Any questions about how we're going to proceed?

MR. MEYERS: No, Your Honor. Thank you.

THE COURT: Okay. Any questions from the government?

MR. THANHAUSER: No, Your Honor.

THE COURT: Okay.

MR. ASHTON: Thank you, Your Honor.

(Whereupon, the proceeding concludes, 10:25 a.m.)

**CERTIFICATE**

I, ELIZABETH DAVILA, RPR, FCRR, do hereby certify that the foregoing constitutes a true and accurate transcript of my stenographic notes, and is a full, true, and complete transcript of the proceedings to the best of my ability.

This certificate shall be considered null and void if the transcript is edited, printed, disassembled, screenshot, and/or photocopied in any manner by any party without authorization of the signatory below.

Dated this 28th day of October, 2026.

/s/ Elizabeth Davila, RPR, FCRR
Official Court Reporter